CASE 96—ACTION BY MAGGIE REED AGAINST WILLIAM MALEY FOR AS-
SAULT AND TRESPASS.—JUNE 5.

# Reed v. Maley.

### APPEAL FROM FLEMING CIRCUIT COURT.

FROM A JUDGMENT SUSTAINING A DEMURRER TO PLAINTIFF'S PETITION
. SHE APPEALS.    AFFIRMED.

TRESPASS—ASSAULT—INDECENT PROPOSAL.

Held:   1.  In an action for an assault or a trespass, the petition must
allege the facts constituting the assault or trespass.
2.  A cause of action will not lie in favor of a woman against a
man who, without trespass or assault, solicits her to have sexual
intercourse with him.

JOHN S. POWER AND G. A. CASSIDY, ATTORNEYS FOR APPELLANT.

This is an action by appellant to recover damages of the ap-
pellee by reason of his coming to her home, in the absence of
her husband, and making an indecent proposal to have sexual
intercourse with her.

The lower court sustained a demurrer to the petition on the
ground that the facts alleged do not constitute a cause of action,
which position, if correct, will leave a wrong without a remedy
unless the husband resorts to the shot gun remedy, the position
taken by the court being that there can be no trespass to the
person unless there is some violence inflicted or threatened,
in other words, there must be an assault or battery.

We submit that if any element of force was required on
the part of appellee to make this an actionable trespass, the going
to her home and his approach to her where she was sitting,
coupled with the unlawful and vile purpose of his going, con-
stitutes a complete trespass, and the indecent proposal is an
aggravation of the trespass.

We insist that appellant has an "action on the case" under
the common law, without any actual force being used.  The
Constitution recognizes the right of personal security and safety,
and declares this right to be inherent and inalienable, and while
one can maintain an action for enticing a servant from his
master, which does not require force, no action, it seems, can
be maintained for an attempt to entice a man's wife or daughter
to commit a criminal act, and especially when it is done in a
wanton, rude and aggravated manner.

Reed v. Maley.

Blackstone says that "trespass, in its largest and most extensive sense, signifies any transgression or offense against the law of nature, or society, or of the country in which we live, whether it relates to his person or his property."

## AUTHORITIES CITED.

Elliott on Roads and Streets, 536; Am. & Eng. Ency. of Law, vol. 26, p. 573, note 2; Am. Rep., vol. 38, p. 703; 3 Blackstone Com., secs. 122 and 123; Pomeroy on Remedies and Remedial Rights, sec. 20; 1 Blackstone Com., sec. 122; subsec. of sec. 1, Const. of Ky.; Sedgwick on Measure of Damages, vol. 1, sec. 135, note A, and vol. 2, sec. 456, note A; Chiles v. Drake, 2 Met., 146; Stater v. Sherman, 5 Bush, 213; Dawson v. L. & N. R. R., 4 Ky. Law Rep., 801; 27 A. D., 287, note 295; 80 A.' D., 149; Sedgwick on Measure of Damages, top page 529, note 5; 3 Black-Stone's Com., sec. 208; Bouvier's Law Dic., p. 628; Sedgwick on Measure of Damages, vol. 1, sec. 135, and vol. 2, sec. 456; Chiles v. Drake, 2 Met., 146; Stater v. Sherman, 5 Bush, 213; Dawson v. L. & N. R. R., Ky. Law Rep., 801, S. M. D., vol. 2, secs. 456, 457, 458, 459, 460, 461, 462 and 463; DeMay v. Roberts, 41 Am. Rep., 154; W. U. Telegraph Co, v. Van Cleave, 22 L. R. A, 54; 25 L. R. A., 434; State of Connecticut v. Avery, 18 A. D., 105.

W. G. DEARING, JNO. P. McCARTNEY, FOR APPELLEE.

The question in this case is, whether or not an action can be maintained for mere words where no physical injury has resulted to the party complaining.

We contend that it is not analogous to an action for libel or slander where damage is done to one's reputation or business, or for an assault, where physical injury is done or threatened, but is based on mental suffering for an insult.

The court properly sustained a demurrer to the petition on the ground that no action can be based upon mere words to recover for mental suffering or anguish, separable from physical injury or damage.

There is no allegation that any gestures were used toward appellant, or that appellee attempted to apply even the least actual force, or that he did any act tending to deprive her of her liberty, or in any way did anything except use language insulting to the appellant, for which we contend there is no legal remedy.

## CITATIONS.

Chapman v. Western Union Tel. Co., 30 Am. St. Rep., 186 (90 Ky., 260); Kallen v. Terre Haute, &c., R. R. Co., 63 Am. St. Rep., 345; Connell v. W. U. Tel. Co., 38 Am. St. Rep., 582; Morgan, &c., v. O'Daniel, 19 R., 193; 21 R., 1044.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

The petition makes substantially the following aver-
ments:   That the plaintiff was a married woman; that on
October 19, 1898, whilst sitting near the window in her
house, the defendant approached near it, and proposed to
her to have sexual intercourse with him; that she indignant-
ly refused the proposal; that the defendant thereby com-
mitted a trespass against her person; that she was fright-
ened, and caused great mortification and shame; and in con-
sequence of which she was greatly excited and damaged.
It was not averred that the defendant entered her house
or was in reach of her, so as to put her in fear.   The court
sustained a demurrer to and dismissed the petition on the
ground that it did not state a cause of action.   In an action
for an assault the petition must allege the facts which con-
stitute the assault, and in alleged trespass it is essential to
state the facts which constitute it.   Stivers v. Baker, 87
Ky., 508, 10 R., 523, 9 S. W., 491.   No facts were averred
which showed that the defendant made an assault upon the
plaintiff, hence did not inflict any injury upon her person.

The sole question presented for consideration is, will
a cause of action lie in favor of a woman against a man who
solicits her to have sexual intercourse with him?   If it will,
the petition states a cause of action; otherwise it does not.
This is a novel case, but the novelty of the case is no reason
for denying a recovery if the cause of action can be made to
rest upon some sound principle of law.   The fact that
learned counsel have been unable to cite any case involving
the question here for our determination strongly conduces
to show that the legal profession for centuries has labored
under the impression that a civil action will not lie on a
state of facts like those averred in the petition, for it is
probable that, during past generations, applications have

Reed v. Maley.

been made to them for the institution of actions like this one. If such applications have been made, it is probable that they have been made by good and virtuous women; and certainly there is no moral or social reason why the members of the legal profession should not have instituted such actions to recover damages for the wounded feelings and humiliation good women have suffered from such proposals, if such an action in their judgment could have been maintained. The solicitation for such intimacy is not equivalent to charging a woman with the want of chastity; therefore, if made under circumstances that would make a charge of unchastity a slander and actionable, no action for slander could be maintained on account of such solicitation. The solicitation was not a libel, and of course not actionable upon that ground. It was not a breach of contract, as in Chapman v. Western Union Telegraph Company, 90 Ky., 265, 12 R., 265, 13 S. W., 880, where there was a failure to deliver a telegram, which resulted in an injury to the feelings, etc. So the principle upon which actions for slander and libel and the Chapman case are based can not be the foundation upon which to rest a recovery in this action. Neither does the principle upon which actions for malicious prosecutions or false arrest are founded furnish a basis for recovery. As there was no assault upon or trespass against the person of the plaintiff, and no physical injury produced, it seems to us that no recovery can be had. It is well settled that mental suffering may be taken into consideration in estimating damages in cases of physical injury. In such cases there may be a recovery for physical and mental suffering arising from physical injury. The objection to a recovery for injury occasioned without physical impact is the difficulty of testing the statements of the alleged sufferer,

Reed v. Maley.

the remoteness of the damages, and the metaphysical character of the injury considered apart from physical pain.

In Wadsworth v. Western Union Telegraph Company, 86 Tenn., 695, 8 S. W., 574, 6 Am. St. Rep., 864, the court had under consideration the question of allowing damages for mental suffering unaccompanied by physical injury. Judge Lurton, then a member of that court, in a dissenting opinion said: "The reason why an independent action for such damages can not and ought not to be sustained is found in the remoteness of such damages, and in the metaphysical character of such an injury considered apart from physical pain. Such injuries are generally more sentimental than substantial. Depending largely upon physical and nervous condition, the suffering of one under precisely the same circumstances would be no test of the suffering of another. Vague and shadowy, there is no possible standard by which such an injury can be justly compensated or even approximately measured. Easily simulated and impossible to disprove, it falls within all the objections to speculative damages, which are universally excluded because of their uncertain character. That damages so imaginary, so metaphysical, so sentimental, shall be ascertained and assessed by a jury with justness, not by way of punishment to the defendant, but as mere compensation to the plaintiff, is not to be expected. . . . Mental distress is or may be in some cases as real as bodily pain, and it as certainly results from language not amounting to an imputation of crime, yet such actions have always been dismissed as not authorized by the law as it has come down to us, and as it has been for all time administered." The only instance in which this court seems to have refused to apply this rule is in Chapman v. Western Union Telegraph Company. There are a class of cases in this jurisdiction where the court has allowed the

jury to award punitive damgaes, where the emplo
railroad have wrongfully ejected persons from a trai
rude, offensive or high-handed manner. Those cases, ho
ever, are no authority for a recovery in this case. As we
have said, the defendant did not accuse the plaintiff of the
want of chastity, but showed a purpose to seduce her from
the path of virtue./ If A should solicit B, a reputable cit-
izen, to join him in the commission of the crime of arson,
or robbery, B would indignantly reject the solicitation. He
might become excited, and feel humiliated and ashamed to
have been thus approached, and might have worried over
it for days and nights thereafter; but could he maintain an
action against A for thus approaching him with such an in-
famous proposition? We think not. Suppose a bawd should
solicit a man upon a public street to have sexual intimacy
with her; he certainly could not maintain a civil action
against her. If an action could be maintained by a woman
against a man for such solicitation, the same right to main-
tain one would exist in his favor. Whilst he might not suffer
the same anguish and humiliation on account of such so-
licitation as the woman, yet the right of recovery would be
the same. The amount of it would only be determined by
reason of the difference in effect such a solicitation would
have upon one or the other. Society and the moral senti-
ments of the people strongly condemn conduct like that
with which the appellee is charged, but there is no principle
of law known to us which will enable a party to maintain
a civil action upon facts like those here under considera-
tion.

Newell v. Whitcher, 53 Vt., 589, 38 Am. Rep., 703, is relied
upon as an authority authorizing a recovery. It appeared
that the plaintiff was a blind music teacher; that she went
to the house of the defendant to give lessons to his daugh-

at he assigned her to a room for the night; that
the night he stealthily entered her room, sat on her
bed, leaned over her person, and made repeated solicitation
to her for sexual intimacy, which she repelled.   The court
held that her private sleeping room during the night was
exclusive; that trespass *quare clausum fregit* would lie
against him; that sitting on her bed and leaning over her
was an assault, and that she was entitled to recover exem-
plary damages.   The principle of that case does not apply,
because the defendant was guilty of trespass *quare clausum
fregit,* and an assault upon the plaintiff's person.   The re-
covery was evidently allowed on account of these wrongs.

In Bennett v. McIntire (Ind. Sup.), 23 N. E., 78, 6 L. R. A.,
736, the husband sued the defendant in trespass, alleging
that the latter with force and arms entered upon plain-
tiff's premises and attempted to seduce his wife by wickedly
soliciting and attempting to persuade her to submit to car-
nal intercourse.   The evidence showed that defendant en-
tered upon plaintiff's premises with his license, and recov-
ery was denied, the court holding that the averments as
to the defendant's conduct after he entered upon the prem-
ises was laid by way of aggravation of damages, and not
as a ground of the action.   The denial of recovery was not
placed upon the ground that a cause of action was in the
wife, not in the husband, for the wrong which she suffered.
The attorney who brought the action, and the court which
tried it, evidently labored under the impression that no
cause of action existed except for the trespass on the prem-
ises, and that the defendant's other acts did not constitute
a cause of action, but were only available as an aggrava-
tion of damages.

It has been urged in consultation that solicitation to com-
mit adultery is a common-law offense, and may be indicted

Reed v. Maley.

as such; and, after that conclusion is reached, the
proceeds to the effect that, as Maley transgressed
mon law, thereby being guilty of an indictable off
cause of action arose. In support of that conclusion,
op on Non-Contract Law, section 71, is cited. It read
follows: "The doctrine, in general terms, is that the ci
wrong and the criminal are legally distinct things, though
both may proceed from one act of the offender. If the in-
jury is of a nature falling on the entire community, an in-
dividual, suffering from it only as others do, can maintain
no action against the wrongdoer, even should it in degree
casually press more heavily upon him than upon others.
But he who suffers a special damage may have his suit,
though by reason of the public harm the defendant is also
indictable." And also section 466, Kentucky Statutes, is
cited, which reads as follows: "A person injured by the
violation of any statute may recover from the offender such
damage as he may sustain by reason of the violation, al-
though a penalty or forfeiture for such violation be thereby
imposed." It is also urged that the cases of the City of Hen-
derson v. Clayton, 22 R., 283, 57 S. W., 1, 53 L. R. A., 145,
and Hutcheson v. Louisville & Nashville R. R. Co., 108 Ky.,
615, 22 R., 361, 57 S. W., 251, support that view. The doctrine
stated by Bishop does not apply to the facts of this case.
If one carries away another's property with the felonious
intention to convert it to his own use, or if one person com-
mits an assault upon another, the wrongdoer may
be indicted therefor, but that fact does not re-
lieve him of liability in a civil action for damages the injured
party may have suffered in his estate or person. This doc-
trine can not be applied, in disregard of other well-known
rules of law, to sustain a recovery where no cause of action
exists. Section 466 of the Kentucky Statutes is of the same

he rule announced by Bishop, except its operation
ted to violations of statutes. As there is no stat-
ouncing a penalty for solicitation to commit adul-
it can not be claimed to have any application to the
under consideration. The statute was applicable to
e cases of the City of Henderson v. Clayton, and Hutche-
son v. Louisville & Nashville R. R. Co., and those cases are
of the character to which the doctrine stated by Bishop
and the provisions of the statute apply. In the former, the
city of Henderson, in violation of the statute, maintained
a pesthouse by reason of which Mrs. Clayton and her fam-
ily took smallpox, and suffered in person and estate. In
the latter case Hutcheson was compelled by the Louisville
& Nashville Railroad, in violation of the Constitution, to
pay excessive freight charges, and for the damages sus-
tained in consequence thereof he was adjudged the right
to recover. The court does not admit (the question not
being here) that the appellee could have been indicted at
common law for the alleged offense of solicitation to com-
mit adultery, but, assuming he could have been, it is of the
opinion that that fact would not enable the appellant to
maintain the action.

The judgment is affirmed.

(June 9, 1903.)

Judge Hobson's dissenting opinion:

Appellant, Maggie Reed, filed this suit against appellee,
William Maley. He demurred to the petition; his demurrer
was sustained; and, she declining to plead further, the
petition was dismissed. From this judgment she appeals.

Whether the facts in the petition are sufficient to con-
stitute a cause of action is the only question to be determin-
ed on the appeal. These facts are as follows: The plain-

tiff was a married woman, a resident of Fleming county; on October 19, 1898, she was at her home, sitting near a window in her house. The defendant came to the house, approached very near to the window, proposed to her to have sexual intercourse with her, saying to her, "Won't you meet me out somewhere? Won't you meet me alone somewhere?" She indignantly refused the proposal. It is charged in the petition that the defendant committed a trespass thus against the person of the plaintiff, and illegally, willfully and maliciously thus made a criminal assault upon her; that thereby she was frightened, humiliated, and caused great mortification and shame, and was greatly excited, unnerved and damaged. The amount of the damages was laid at $3,000, for which judgment was prayed.

So much of the opinion of the court is concurred in as holds that the petition fails to state facts sufficient to constitute a cause of action for assault. See Stivers v. Baker, 87 Ky., 508, 10 R., 523, 9 S. W., 491; 3 Cyc., 1025; Bennett v. McIntire (Ind. Sup.), 23 N. E., 78, 6 L. R. A., 736. But on another ground it is submitted that the petition is sufficient.

In State v. Avery, 7 Conn., 266, 18 Am. Dec., 105, the defendant was indicted for sending to a married woman a letter written by him proposing carnal intercourse with her. It was urged that he could not be punished for criminal libel because there was no publication of the letter; but the court held that the sending of such a letter, without any publication, is clearly an offense of a public nature and punishable as such, as it tends to create ill blood and cause a disturbance of the public peace; that, adultery being an offense, an attempt to commit it, or a solicitation to another to commit it, is a misdemeanor. In Connecticut,

when this case was decided, adultery was a feiony. By
our statute it is only a misdemeanor. Kentucky Statutes,
1899, section 1320. In Smith v. Commonwealth, 54 Pa.,
209, 93 Am. Dec., 686, it was held that solicitation to adul-
tery is not indictable where adultery is by law made only
a misdemeanor. But it is hard to see why the solicitation
to commit a felony should be punishable, and not that to
commit a misdemeanor, nor does the weight of authority
sustain this distinction. In 1 Bishop on Criminal Law, sec-
tion 768, it is said: "Though to render a solicitation in-
dictable, it is, in general, as in other attempts, immaterial
whether the thing proposed is technically a felony or a
misdemeanor; yet, as the soliciting is the first step only in
a gradation reaching to the consummation, the thing in-
tended must, on principles already explained, be of a graver
nature than if the step lay further in advance."

In Com. v. Tibbs, 31 Ky., 524, the defendant was indicted
for challenging another to fight a duel. The proof showed
that when they had been quarreling Tibbs said to him,
"I am told you carry weapons for me. I will fight you a
duel with a pistol or rifles from one step to a hundred
yards." The court held that, considering the occasion and
the accompanying circumstances, the words did not neces-
sarily import a demand, but only willingness to fight if the
other person desired such an encounter. It then added:
"Such words might amount to a misdemeanor at common
law, for they may be deemed an insinuation of a desire
to fight with deadly weapons, which might provoke such
combat, and which, therefore, is punishable as a misde-
meanor."

In United States v. Lyles, 4 Cranch, C. C., 469, Fed. Cas.
No. 15,646, it was held a misdemeanor to solicit another
to commit a breach of the peace. So it has been held in-

dictable at common law, independently of statute, to solicit a witness not to testify before the grand jury or on the trial of the case. State v. Keyes, 30 Am. Dec., 450, 8 Vt., 57. In this case the court, by Judge Redfield, said: "It is equally well settled that an endeavor to induce another to commit a felony or misdemeanor is indictable as a common-law offense. . -. . And we feel no hesitation in saying that the attempt to commit an offense, or the soliciting another to commit an offense, should (with few exceptions, not necessary to be enumerated here, resting upon peculiar ground) be held indictable as misdemeanors at common law."

In Com. v. Willard, 22 Pick., 476, the court, in attempting to define those cases in which solicitations are indictable, said: "One consideration, however, is manifest in all the cases, and that is that the offense proposed to be committed by the counsel, advice or enticement of another is of a high and aggravated character, tending to breaches of the peace or other great disorder or violence, being what are usually considered *mala in se*, or criminal in themselves, in contradistinction to *mala prohibita*, or acts otherwise indifferent than as they are restrained by positive law."

In a note to State v. Butler (Wash.), 35 Pac., 1093, 25 L. R. A., 434, 40 Am. St. Rep., 900, the authorities are exhaustively collected, and, criticising the rule followed in some of the States, the learned editor, summing up the authorities, says: "But that rule does not allow for the growth of the common law, which is certainly a thing of growth. In fact, indictments for solicitation to crime are of comparatively modern origin, and in some cases have not been used until quite recently. The true rule would seem to be that suggested by Judge Lawrence in Rex v.

Higgins, 2 East, 5, who made the question of indictability depend upon whether or not it is prejudicial to the community."

Adultery is a grave offense under the moral law. A solicitation to commit adultery, if unsuccessful, is liable to lead to violence and bloodshed at the hands of the relatives of the woman; and if successful it defeats the end for which marriage was intended, and destroys the woman. It seems anomalous to say that a solicitation to commit a breach of the peace, or to disobey a subpoena, is at common law indictable, but that solicitations to adultery are no offense, although necessarily attended with more serious consequences to the community. It may therefore be safely concluded that solicitation to adultery is a common-law offense, and may be indicted as such.

But aside from this, section 1271, Kentucky Statutes, 1899, makes it a misdemeanor for any one to use in the presence of another person "any abusive or insulting language, intending thereby to insult such other person or persons, or with the intent to provoke an assault." The proposal of the defendant to the plaintiff was equivalent to a charge of unchastity, and was grossly insulting. It was intended as a charge of unchastity, and was therefore intended to insult her. If A said to B, "You have stolen my watch," he would not be excused on the ground that he did not expect B to take it as an insult. If the words used are insulting and are intended as an insult, there is an intention to insult, although there is no expectation that the insult will be resented. The defendant might therefore have been prosecuted under this statute. His act being punishable criminally, can it also be made the subject of a civil action for damages? In Bishop on Non-Contract Law, section 71, it is said: "The doctrine, in general

Reed v. Maley.

terms, is that the civil wrong and the criminal are legally distinct things, though both may proceed from one act of the offender. If the injury is of a nature falling on the entire community, an individual, suffering from it only as others do, can maintain no action against the wrongdoer, even should it in degree casually press more heavily upon him than upon others. But he who suffers a special damage may have his suit, though by reason of the public harm the defendant is also indictable." This principle was approved by this court in City of Henderson v. Clayton, 22 R., 283, 57 S. W., 1, 53 L. R. A., 145, and Hutcheson v. L. & N. Railroad, 108 Ky., 615, 22 R., 361, 57 S. W., 251. Section 466, Kentucky Statutes, 1899, also provides: "A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

It is insisted for the appellee that the petition shows no special damage, and authorities are cited to the effect that mental suffering, not accompanied with any physical injury or actionable wrong, is insufficient to constitute the basis of an action. But this rule does not apply to wrongs done maliciously or with insult, where the mental suffering is the natural and proximate consequence of the wrong, and there is, aside from it, a recognized cause of action. Amer. & Eng. Ency. of Law (2d Ed.), 667-669. See, also, 1 Sedgwick on Damages, section 47.

It is charged in the petition that the plaintiff was excited, unnerved and damaged by the wrongs of the defendant. If she was made sick or lost time, this would be a special damage entitling her to maintain an action under the rule, although the sickness or loss of time was the result of the mental condition produced by the defendant's

wrong; for his wrong was the primary cause of the trouble, and the damage was the proximate and natural result of it.   One who is unnerved is in an abnormal condition or sick, and, if this condition was the proximate result of the defendant's act, the plaintiff has suffered special damages therefrom within the meaning of the rule.   She may recover compensation for the injury she sustained, and, in addition to this, the jury may in their discretion award such sum by way of punitive damages as they may deem proper.   For the action is in the nature of an action of trespass on the case for a malicious wrong, and punitive damages may be awarded as in actions for slander or malicious prosecution.   The purity of woman and the sanctity of the marriage relation lie at the basis of our whole social fabric, and attempts to destroy them are grave offenses. The law is inadequate indeed if it leaves such offenses to be punished wholly by the relatives of the injured woman. This brings about bloodshed and disregard of the law itself.   The actual injury that may be done to a virtuous woman by a wrong of this description is incalculable.   If the plaintiff had suffered a miscarriage or sustained some direct pecuniary loss as the proximate result of the wrong, it would hardly be doubted that she might maintain an action for the damages thus sustained by her.   But when she is crushed under the insult and unnerved and made sick, the damage or injury, though different in a degree, is none the less actual than in the case supposed.   In 8 Amer. & Eng. Ency. of Law it is said:   "There has never been doubt that a defendant whose act amounts in law to a legal wrong is responsible in damages for all the loss which is both natural and proximate consequence of his wrongful act." Page 69.   "Though an act of the plaintiff himself has intervened between the defendant's wrong and the injury

Reed v. Maley.

suffered, the latter is not thereby excused, if the interven-
ing act was the result of or naturally and reasonably in-
duced by the defendant's earlier wrong." Page 578. The
same rule is laid down in 1 Sedgwick on Damages, section
129: "The true test would seem to be whether the action
of the intervening agency was such as was to be expected
to happen upon the defendant's act. If it were 'so to be
expected, the result is not remote. In the case of a human
agency, the intervention will generally be of a sort not to
be expected. But where the intervention was di-
rectly and naturally induced by the defendant's
act, the consequence is not remote, though the intervening
agency was human." The natural effect of an indecent
proposal of this character to a virtuous woman would be to
upset her nerves and unfit her for discharging for the time
her domestic duties. It would as truly make her sick as
the administration of a nauseous drug, and such a result
was reasonably to be expected. The injury in the one case
is none the less actual and none the less natural than the
other.

I therefore dissent from the opinion of the court.