## Southern Railway in Kentucky v. Owen, by, et al.

(Decided January 15, 1914.)

### Appeal from Shelby Circuit Court.

1. Damages—Fright—No Recovery for Unaccompanied by Physical Injury.—There can be no recovery for fright unless it is accompanied by physical injury.

2. Damages—Excessive.—When it appears that the damages awarded in cases of personal injury are so excessive as to indicate that the jury was influenced by passion or prejudice, the verdict should be set aside.

3. Damages—Nervousness—Instruction.—An instruction allowing a recovery for "mental pain or nervous or physical suffering" is erroneous in the use of the word "nervous." A recovery should be limited to physical or mental pain or suffering.

WILLIS, TODD & BOND, ALEXANDER P. HUMPHREY and E. P. HUMPHREY for appellant.

RALPH GILBERT and C. G. BARRICKMAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In September, 1912, Harry Owen, a little boy about four years old, was walking from a store conducted by his mother in Shelbyville, Ky., to her residence, a short distance away. In going between these places he crossed the railroad track of the appellant company close to an elevated water tank owned by the company, and when he was near the tank, which was full of water, it burst and the water contained in the tank escaped in a large volume and with considerable force. Harry was caught and carried about thirty feet by the flood of water that escaped from the tank and landed against a fence, from which he was rescued in a few minutes by persons who saw the accident.

In January, 1913, he brought this action, by his next friend against the appellant company to recover damages for injuries it was alleged he sustained by reason of being caught in this body of water and carried and thrown by it against the fence. The petition charged that the bursting of the tank was the result of the negligence of the company in not maintaining it in suitable condition, and that Harry sustained mental, as well as physical, injuries by the flood of water that struck him, and also by being thrown against the fence.

On a trial before a jury there was a verdict for one thousand dollars in his favor and a judgment entered accordingly.

On this appeal we are asked to order a new trial on the ground that the court erred in failing to direct a verdict in favor of the company, in giving and refusing instructions, and because the judgment is excessive.

It is shown in the evidence that the bursting of the tank was due to its unsafe construction and so we may pass the question of the negligence of the company.

The evidence also shows that Harry's mother kept a grocery store near the railroad depot at Shelbyville, and that Harry was a cheerful, attractive, precocious boy, and like many other little boys of this character and disposition, who run about in public places, was a general favorite, petted and spoiled and humored by everybody that knew him. It also appears that in his childish way he occasionally smoked or tried to smoke a cigarette, and would puff at cigars and drink gayoyla, and other like decoctions that were kept in his mother's store. It also shows that at the time in question, and for some months before, Harry was afflicted with sores that appeared all over his body.

It also appears that when Harry was rescued from the temporary flood a few minutes after the tank burst, he was taken to his home, the dirt and sand washed out of his eyes and ears, dry, clean clothes put on him, and that in a short time afterwards, on the same day, he was about the street and at his mother's store playing in his usual way.

As further illustrative of the fact that his injuries, if any, were slight, Dr. Bland, who was called by his mother to see him about an hour after the accident, did not discover anything the matter with him, nor did Dr. Smith, who about two hours afterwards went to see him, and finding him on the front porch of his mother's store eating bananas, did not of course think it necessary to give him any attention. A few days after this Dr. Beard, of Shelbyville, also made or attempted to make some examination of him for the purpose of ascertaining what injury, if any, he had received, and he, too, was unable to discover any trouble resulting from the accident.

It seems, however, that a few weeks after the bursting of the tank Harry's mother took him to Louisville to see Dr. Barbour, a specialist in the treatment of the diseases of children. Dr. Barbour testifies that he found Harry in a state of great nervous excitement, and although he could not discover any signs of injury to the bone or flesh, that an examination of his nerves showed that he did not have good control of his muscular system. He also said, in answer to a hypothetical question

describing the flood of water that caught Harry and swept him to the fence where he was rescued, that a situation like this would produce on the mind and person of a child like Harry a shock to the nervous system that would require time and attention to relieve, complicated with what he termed "spinal concussion." He also testified that he saw him severel times and observed a general improvement in his condition. Asked for what length of time the trouble he found would exist, he said, "Well, that is rather hard to answer definitely. There has been a general improvement made in the little fellow's condition, and I do not know how long the trouble will continue."

Other witnesses testified that after the accident Harry was less cheerful and happy than before and was disposed at times to be peevish and irritable; and would often exhibit his temper by kicking and screaming when people came about him and was fretful and restless at night. These manifestations of temper and restlessness do not, however, throw much light on the question of Harry's injury. All normal, natural boys of four years of age are at times peevish and irritable and fidgety, and will at times kick and scream and at nights be fretful and restless and nervous. Indeed, if Harry did not exhibit these symptoms of healthy childhood, his mother would have much greater cause for alarm about his health than she need have in his present condition. It is also quite likely as argued by counsel, that his restlessness at nights and his fits of irritability during the day were caused by the sores on his body, the gayoyla, the bananas and the other things and decoctions that he was allowed to eat and drink, but probably they were brought about by the shock that he received which produced, as Dr. Barbour testified, some physical injury.

That he was a restless, fidgety little fellow, and at times, as one witness expressed it, "rantankerous," is abundantly shown by the evidence. But he was nervous and restless and fidgety at times long before the tank burst, as is shown by the evidence of Dr. Bland, the family physician who testifies that some months before this he was called to see him at the instance of his mother, who thought he had a rupture. He says that when he tried to examine him "Harry would cry and was always kicking something, and I had right smart

trouble examining him. He was right hard to control, and I did not succeed in controlling him.''

While the evidence of physical injury is not satisfactory, yet we cannot say that there is no evidence that he did not sustain some physical injury when he was struck by the swift body of water and carried by it against the fence, and however slight the physical injury may have been, it was caused by the negligence of the railroad company, and Harry is entitled to compensation commensurate with the physical injury he sustained. But a verdict and judgment for one thousand dollars is so grossly disproportionate to the physical injury received that we have no hesitation in saying that the jury, in awarding this amount, must have been influenced by passion or prejudice.

It is further insisted that the court erred in failing to give to the jury this instruction offered by counsel for the railroad company: ''The court instructs the jury that they can find nothing for the plaintiff on account of fright or mental distress or anxiety, unless they believe from the evidence that the same was accompanied by physical injury.''

It is well settled that there can be no recovery for fright unaccompanied by physical injury: Morse v. C. & O. Ry. Co., 117 Ky., 11; Reed v. Maley, 115 Ky., 816; Reed v. Ford, 129 Ky., 471; Chesapeake & Ohio Ry. Co. v. Robinett, 151 Ky., 778, 45 L. R. A. (n. s.), 433. But as there was in this case physical injury, however slight, caused by the impact of the water and the collision with the fence—as the evidence of Dr. Barbour conduced to show, it was not error to refuse the instruction.

The instruction given authorized a recovery ''for mental pain or nervous or physical suffering,'' and the word nervous should have been omitted. In cases like this the recovery is limited to mental and physical suffering, and while nervousness is a species of mental suffering, we think it better that instructions in cases like this should follow the form that has been so long approved.

The judgment is reversed, with directions for a new trial in conformity with this opinion.