# THE STATE OF MISSOURI, Respondent, v. JOHN H. FULKERSON, Appellant.

### Kansas City Court of Appeals, January 5, 1903.

1. **Assault: EVIDENCE: IDENTITY OF ASSAILANT.** The evidence relating to an assault upon the prosecutrix is reviewed and held sufficient to send to the jury the question of identity of her assailant, notwithstanding she was largely contradicted in her description of the apparel worn by the defendant on the occasion.

2. ———: **WHAT SUFFICIENT TO CONSTITUTE.** The defendant came, in the absence of the family, to the house where the prosecutrix was serving as a domestic and asking for a drink followed her into the kitchen, and after asking her some more or less significant questions placed his left hand over the door and his right hand upon her arm. Thereupon she jerked loose and ran through the dining-room and hall up stairs—he following to the stairway. *Held*, sufficient to constitute an assault. (Cases considered.)

3. ———: **IDENTITY OF ASSAILANT: EVIDENCE: PHOTOGRAPH.** The fact that on the next day after the assault the prosecutrix was told that a photograph handed her with the view of her identifying her assailant was the photograph of the defendant, does not render such photograph inadmissible in evidence on the trial.

4. ———: **INDICTMENT: SUFFICIENCY OF.** An indictment set out in the opinion is held sufficient in form to charge an assault. (Cases reviewed.)

5. ———: ———: ———. *Held*, further, that said indictment sufficiently informed the defendant of the nature and cause of the accusation, as an assault may be charged in general terms without specifying the manner in which it was made.

#### ON MOTION FOR REHEARING.

6. ———: **WHAT CONSTITUTES: INDICTMENT: INSTRUCTION.** An indictment charged that an assault was made for a lustful and immoral purpose. An instruction authorized the jury to convict although the assault was not made for such purpose, since those words were surplusage and not necessary to constitute an assault.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

AFFIRMED.

*A. B. Logan* for appellant.

(1)   The indictment does not charge any offense, and is fatally defective in this:   It does not charge the acts of defendant to have been either willfully or unlawfully done. State v. Green, 11 Mo. 585, and authorities therein cited.  (2) The indictment is fatally defective in not including, ''and so the grand jurors aforesaid, upon their oaths aforesaid, do present and charge that he, the said John H. Fulkerson, her the said Nettie I. Madden, in the manner, and by the means aforesaid, did unlawfully assault, against the peace and dignity of the State.''   Unless it so concludes, the indictment is fatally defective, and will not support a conviction under it.   Constitution of Mo., art. 2, sec. 22; State v. Myers, 99 Mo. 107; State v. Clay, 100 Mo. 571; State v. Stacey, 103 Mo. 11; State v. Terry, 109 Mo. 601; State v. Kreuger, 134 Mo. 262; State v. Sanders, 158 Mo. 610; State v. Ferguson, 152 Mo. 92; State v. Lichliter, 159 Mo. 98; State v. Patterson, 95 Mo. 402.   (3) The court erred in admitting, against the objections of defendant, the photograph marked exhibit ''A,'' and in allowing any evidence connected therewith.   (4) The court erred in giving instruction No. 1 to the jury, as asked by the State.    State v. Clay, 100 Mo. 583; State v. Burks, 159 Mo. 573.

*J. W. Suddath* for the State.

(1)   A battery includes an assault, and every touching of another's person or the clothing of a person, in a rude, insolent or angry manner, constitutes a battery.   Kelley's Criminal Law, sec. 571.   1 Am. and Eng. Ency. Law (1 Ed.), page 783; Desty's Am. Crim. Law, sec. 130a, 130e; Johnson v. McConnell, 15 Hun 293; 4 Century Digest 793; Murdock v. State, 65 Ala. 520; Hunt. v. People, 53 Ill. App. 111; State v. Philley, 67 Ind. 304; Thompson v. State, 43 Texas 583; State v. White, 52 Mo. App. 285; Commonwealth v. McKie, 67 Mass. 61.   (2) Indictment for common assault need

not state the manner nor the intent but merely charge in the words of the statute. State v. Cox, 43 Mo. App. 328; State v. Clayton, 100 Mo. 516; State v. Chumley, 67 Mo. 41; State v. Karnes, 51 Mo. App. 293; State v. McDaniel, 40 Mo. App. 256; State v. Phipps, 34 Mo. App. 400; State v. Elvins, 101 Mo. 243; State v. Chandler, 24 Mo. 371. (3) If, after striking out a portion of the indictment as surplusage, enough be left to make full and substantial charge of the crime intended to be charged, then such striking out is admissible and the indictment is good. State v. Myers, 99 Mo. 107.

BROADDUS, J.—The defendant was indicted and convicted for an assault upon the person of a female named Nettie I. Madden.

A brief review of the evidence shows that the prosecutrix on Sunday, May 20, 1900, the day on which the offense is charged to have been committed, was a domestic servant in the family of one William R. Rice, who resided about one and one-fourth miles south and three-fourths of a mile east of the village of Columbus, Johnson county, Missouri; that the defendant lived with his mother two and three-fourths miles south and three-fourths of a mile east of said village. The prosecutrix testified that on the day named, at about one-quarter to twelve o'clock m., while she was alone in the Rice dwelling, a man came to the house and knocked at the front door; that she answered the knock, whereupon the said man asked for Charley Rice, a son of William R. Rice; that she told him that said Charley Rice had gone to church and that thereupon he asked for a drink of water, at which time she left the front door and started to the kitchen, passing through several rooms, the man following; that when she got into the kitchen he asked her if she was not the young lady who had been staying there and she told him no; that he then asked her if she was not a grass widow, when she again answered no, upon which he walked to the door and asked her if she knew him, and when she answered that she did not, he

said he would tell her his name if she would not tell any one; that he then told her, amongst other things, after asking her if she knew Doctor Morrow, that the latter had sent him down to get acquainted with her; that she told him she did not see why Doctor Morrow had sent him down for that purpose, at which he laughed and went and put his hand on the door when she started to run out of the room; that he then put his left hand over the door and placed his right hand on her arm, whereupon she jerked away and ran through the dining room and hall and up the stairs, he following until he got upon about the third step of the stairs—she being then on the top step—when he called out and said he had something to say to her; that she then ran into a room and shut the door.

The defendant denied that he was the person who committed the assault and introduced many witnesses to prove an alibi.

The prosecutrix did not recognize the person at the time of the assault as that of the defendant, but she stated that she thought she had seen a man who acted like such person, and when confronted with defendant at the trial unhesitatingly and positively identified him as the man who had made the assault. She stated that she had seen him in August, 1898, or 1899, when he wore a full beard (the defendant was clean-shaven at the time of the assault) at which time he had come to her father's house hunting a mad dog, on which occasion she had given him a drink of water. She stated, also, that on the morning following the assault when she was shown a photograph of defendant that she became positive that he was her assailant, and that she was informed when Rice came home from church on the Sunday named that the defendant was clean-shaven. This photograph, after being identified by the prosecutrix as a true picture of the person who assaulted her, was introduced as evidence and inspected by the jury.

It was also sought to identify the defendant as the wrongdoer by a description of the clothes he wore, of the horse he rode and the direction he was seen going

on the day named, the prosecutrix stating that the person who assaulted her wore a light gray suit, a "lay-down" collar, red necktie and a brown hat and tan-colored shoes. On cross-examination she added to this description "a white starched shirt and a vest of a light color." The defendant introduced a number of witnesses, some of them members of his own family, who testified that on said Sunday he wore a black coat, light trousers, a white hat, a red necktie, and no vest. Two witnesses for the State testified that defendant at said time was wearing a light-colored suit. All agree, however, that he had on tan-colored shoes.

One witness, Samuel Burge, testified that in about a week from the day of the assault he saw defendant coming out of the house of Doctor Morrow and that he met him where, or near where, they had met on the Sunday before, and defendant said to him, "if the Rices ask you how I was dressed, tell them you don't remember."

It was shown that in order to go home from Columbus, where it is admitted defendant was on the Sunday in question a short time before the assault was made upon Miss Madden, he would have to pass by the said Rice place; but it was also shown that there was a road which branched off of said other road before reaching the Rice place which led by what the witness called "the Neal Doggett place." The defendant testified that he took this latter road as he was in quest of a fishing party at Blackwater creek about four miles further south, consequently he could not have been at the Rice place. He was corroborated in this by several witnesses who testified that they saw him on said road. And there were other circumstances introduced which very much strengthen this evidence. Several witnesses for the State, however, say that they saw him after he had passed the road that led by Doggett's, going in the direction that led by the Rice place.

The evidence showed that the defendant had a brother, Reuben, who resembled him greatly in appearance and that one of them was often mistaken for the

other. It was also shown that they were both together on the Sunday in question and that both were riding sorrel horses very much alike, only that the one ridden by defendant was a pacing horse and the other was not. Reuben states that he went from Columbus home on that day, riding his own horse and passing by the Rice place; and one of defendant's witnesses, named Kavanaugh, testified that he saw, as he believed, Reuben going by in the direction of the Rice place but that he was riding the pacing horse.

We have not given even an abstract of all the evidence, only a brief outline of the most important, from which it may be readily seen that there was a serious conflict in the testimony. But enough has been stated to show that there was important evidence tending to establish defendant's guilt, which left that question to the sole determination of the jury.

The character of the prosecutrix for chastity and her reputation for truth was not attacked, but defendant contends that she was so overwhelmingly contradicted in her description of the clothes worn on the occasion by the man she alleged had assaulted her, that she is not entitled to belief, and that therefore the whole case failed and the court should have instructed for an acquittal. It is possible that the jury in considering that part of the evidence took into consideration (as they might with propriety have done) the alarming situation of the prosecutrix and made due allowance for a failure under the circumstances to note accurately the dress worn by her aggressor. It is assumed that she was a modest, virtuous female, as there is nothing in the record showing otherwise, and we can well conceive how, on such an occasion, whilst all alone and no one near to defend her, she might readily make a mistake both as to the dress and person of her assailant. There is nothing in the record to show that the jury were influenced by either passion or prejudice.

But defendant contends that notwithstanding he may have been guilty of the act for which he stands charged, it does not constitute any offense known to

the law—that it was not in and of itself an assault.  In State v. White, 52 Mo. App. 285, it was shown that the defendant, who was a physician, had hold of the hand of the prosecutrix, or that he retained his hold upon her hand against her will (making the while solicitations for sexual intercourse with her) for a lustful and immoral purpose.  The court held that the facts constituted an assault.  The claim is made, however, that the case cited is different from the one here, for in the former the defendant solicited sexual intercourse, which element is lacking in the latter.  We think the two are much alike in the facts and the same principle applies to both.  We can not see any difference in effect whether the solicitation was made by word of mouth or by actions.  Actions are often as expressive as words, and sometimes much more so.  On this question the defendant has called our attention to the cases of State v. Priestly, 74 Mo. 24, and State v. Owsley, 102 Mo. 678. both of which were for rape and in which it was held: "To warrant a conviction for an assault to commit a rape, the evidence must show that it was the defendant's intention, if it became necessary, to accomplish his purpose at all events regardless of any resistance the woman might make."  Surely, it is not to be contended that the intent in a case like the present one must be shown to have been on the part of the defendant of such a nature that he would accomplish his lustful purpose against any resistance the woman might have made. That would have made it an assault to commit a rape; but this is just what the reasoning of the defendant's counsel would lead us to.

The law of the case is also stated in Goodman v. State, 60 Ga. 509, where it was held: "It was an assault and battery for a man to put his arm licentiously, though tenderly, about the neck of a woman against her will."  See also, Thompson v. State, 43 Tex. 583, and Commonwealth v. McKie, 67 Mass. 61.

It is claimed that the court committed error in allowing defendant's photograph to be submitted to the jury as evidence, for the reason that the prosecutrix

was told prior to the time she first saw defendant after the Sunday in question that the picture represented the defendant. She stated that she was unable to identify her assailant by name until she saw defendant's photograph the next morning and was told to whom it belonged. The fact that she had been shown the photograph and told whose it was could make no difference, for the object was to enable her to identify the person by the picture. Because she was told that the photograph was that of the defendant was immaterial, for its very production in the presence of the defendant would tell the jury to whom it belonged.

The defendant's objection to instruction number one given for the State is disposed of by what has already been said and it will not therefore be further noticed.

The defendant unjustly insists that the indictment is not sufficient to sustain a conviction. Omitting caption it is as follows: "The grand jurors for the State of Missouri, impaneled, sworn and charged to diligently inquire for the body of the county of Johnson in the State of Missouri, upon their oaths present and charge: That John H. Fulkerson on the 20th day of May, 1900, at Johnson county, Missouri, did then and there unlawfully assault one Nettie I. Madden, by then and there placing his hand upon and catching hold of the said Nettie I. Madden, with the intention, and for a lustful and immoral purpose, and against the will of the said Nettie I. Madden, against the peace and dignity of the State."

It is contended that the indictment is fatally defective in not concluding with the words, viz., "And so the grand jurors aforesaid, upon their oaths aforesaid, do present and charge that he, the said John H. Fulkerson, her, the said Nettie I. Madden, did unlawfully assault against the peace and dignity of the State." The appellant relies on the case of State v. Myers, 99 Mo. 107, and other kindred cases of felony. In the Myers case the indictment was for murder, which was held to be

bad for want of similar concluding words, but it was held sufficient without such words to make a good charge for manslaughter. State v. Stacy, 103 Mo. 11; State v. Sanders, 158 Mo. 610, were cases for murder and have no application to misdemeanor. If it is the law, as held in the Myers case, that the omission of such concluding words would constitute a good charge for manslaughter, we can see no good reason for holding that an indictment for a misdemeanor would not be sufficient without them.

It is further insisted that the nature and cause of the accusation are not stated in the indictment. In State v. Krueger, 134 Mo. 262, where the indictment was for a violation of section 374, Revised Statutes 1889, of the election law, a felony, the court held that an indictment in the language of the statute is sufficient only where all the facts which constitute the offense are set forth in the statute. But it was also held that where the statute described the whole offense it was only necessary to charge the crime in the words of the statute. In State v. Terry, 109 Mo. 601, the defendant was charged with the violation of section 3826, Revised Statutes 1889, relating to cheats, frauds, etc., the indictment following a form prescribed by the statute. The court held that the case being one for felony, the indictment though following the form prescribed was bad, as the defendant was not informed thereby of the nature of the charge against her and for that reason it was a violation of article 2, section 22 of the State Constitution.

But in State v. Clayton, 100 Mo. 516, it was held: "An assault may be charged in general terms, without specifying the manner in which it was made." In State v. Cox, 43 Mo. App. 328, it was held: "The law never required the same particularity in indictments for misdemeanors as it did in those for felonies," and that, "an information for a common assault, which charges the offense in general terms, without charging any particular intent, is sufficient." See also, State v. Chumley, 67 Mo. 41; State v. Phipps, 34 Mo. App. 400. We think

the indictment not only formal but that under the authorities it sufficiently informed the defendant of the nature of the charge against him.

For the reasons given the cause is affirmed. All concur.

### OPINION ON MOTION FOR REHEARING.

BROADDUS, J.—The ground for the motion is that this court overlooked the point made, that the trial court committed error in giving instruction number one, at the instance of the State, wherein the jury were authorized to convict the defendant, although the assault was not made for a lustful or immoral purpose as charged in the indictment. The defendant has cited us to many cases which upon examination we find have no application.

The indictment, notwithstanding it charged that the assault was made for a *lustful or immoral purpose,* only in effect charged a simple assault, and the words italicised had no effect to either enlarge or diminish the offense. They amounted to merely surplusage. Even in a case of a charge of murder with intent to rob, the court held, that that part of the indictment alleging that the offense was committed with such intent was surplusage. State v. Meyers, 99 Mo. 107.

Under all the authorities the offense charged was only an assault, whatever the intent may have been, and whereas it was competent to show by the facts defendant's intent, it was not necessary to allege it. The motion for rehearing is overruled. All concur.