## BEAUSOLIEL v. UNITED STATES.
### No. 7267.

United States Court of Appeals for the
District of Columbia.

Decided Oct. 16, 1939.

James R. Murphy and Robert M. Gray, both of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Albert Goldstein, Asst. U. S. Atty., both of Washington, D. C.

Submitted to GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted in the lower court upon an information charging him with assault. The record reveals that a child of six years of age was placed in the front seat of a taxicab operated by appellant; that the latter was directed to take the child to a department store in the downtown section of Washington, there to meet her mother; that during the trip which followed appellant exposed a private part of his body and requested the child to hold the same, which she did, fearing that if she refused she would not be taken to her mother. Otherwise than as stated appellant did not touch her or threaten her with violence or harm. It appeared, in addition, that the child had been in appellant's cab on prior occasions and had been in the front seat with him.

Error is assigned to the action of the court in permitting the child to testify, the ground of objection being that she was not qualified, first, because of her tender age and lack of understanding of the difference between right and wrong, and of the consequences of telling an untruth, and, second, because she was not sworn before testifying. There is no merit in either contention.

The competency of a child to testify is a matter within the discretion of the trial court which will not be disturbed unless error is clearly manifest. The applicable rule was stated by the Supreme Court in Wheeler v. United States:[1]

"While no one would think of calling as a witness an infant only two or three years old, there is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous. These rules have been settled by many decisions, and there seems to be no dissent among the recent authorities."

The examination of the witness on voir dire in the present case is not included in the record on appeal, the only evidence of her testimonial qualifications being her statements on cross-examination to the effect that "she attended Sunday School where she sang songs and played games; that she did not believe in Hell or the Devil, and did not believe that people who told untruths or did other 'bad things' would be punished after death; that she believed people who did not tell the truth would 'get in trouble' and would

---

[1] 159 U.S. 523, 524, 525, 16 S.Ct. 93, 40 L.Ed. 244. See also, Williams v. United States, 3 App.D.C. 335, 340; Alford v. State, 182 Ark. 1184, 34 S.W.2d 224; Davis v. Commonwealth, 161 Va. 1037, 171 S.E. 598; People v. Karpovich, 288 Ill. 268, 271, 123 N.E. 324, 325.

receive, punishment of some kind or other." The proper test in determining the qualifications of such a witness is not whether he believes in the devil or that liars will be punished after death, but whether the child has "sufficient intelligence to have a just appreciation of the difference between right and wrong, and a proper consciousness of the punishment of false swearing."[2] This has been otherwise expressed by an eminent text-writer as follows:[3] "(1) The capacity of *observation (ante,* § 478) is the first of the essential requirements, and has been occasionally so noted by the Courts. (2) The capacity of *recollection* is also an essential requirement; though little likely to be called into question, and probably often intended to be covered by the expressions defining the next requirement. (3) For the capacity of *communication,* as in the case of mental derangement (*ante,* § 495), there are two elements to be taken into consideration: (a) There must be a capacity to *understand* questions put, and to frame and express intelligent answers. (b) There must be a sense of *moral responsibility,*—a consciousness of the duty to speak the truth." Upon the record in this case there is no reason for us to disturb the decision of the lower court as to the capacity of the witness.

■ Appellant's objection to the action of the court in permitting the witness to testify without being sworn is raised for the first time on this appeal. Moreover, it is neither contended on this appeal, nor does the record suggest, that the fact was not known to appellant early enough so that he could have made timely objection. Under the circumstances, it comes too late.

As was said by the Supreme Court of Nebraska:[4] " * * * we are of the opinion that the irregular administration of the oath to a witness, or the taking of testimony without an oath at all, must, if known to the adverse party, be objected to at the time. He may not, with knowledge of the irregularity, permit the trial to proceed, and raise the question after verdict."[5] This is the uniform rule.[6]

■ Error is assigned, also, to the admission of the testimony of the child's mother. She testified, in substance, that she was not present when her daughter arrived at the department store but that she met her a few minutes later; that after walking with her a short distance she noticed a peculiar expression on her face and that, upon questioning, the child told her what had happened in the taxicab. Over objection of appellant, the court permitted the witness to testify to this conversation. Declarations, exclamations and remarks made by the victim of a crime after the time of its occurrence are sometimes admissible upon the theory that "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy * * *."[7] What

---

2 Williams v. United States, 3 App.D C. 335, 340.

3 1 Wigmore, Evidence (2d ed. 1923) § 506. See Gonzales v. State, 113 Tex. Cr.R. 439, 22 S.W.2d 674; Bell v. State, 164 Ga. 292, 295, 296, 138 S.E. 238, 240, 241; Mattingly v. Commonwealth, 240 Ky. 625, 42 S.W.2d 874.

4 O'Neill v. Clark, 57 Neb. 760, 764, 78 N.W. 256, 257.

5 See State v. Hope, 100 Mo. 347, 355, 356, 13 S.W. 490, 492, 8 L.R.A. 608; Fetty v. State, 119 Neb. 619, 230 N.W. 440; State v. Melancon, 163 La. 435, 112 So. 37; Keeney v. State, 53 Okl. Cr. 1, 6 P.2d 833, 835. See also, People v. Duffy, 110 Cal.App. 631, 636, 294 P. 496, 497: "In the absence of any objection made on this ground at the trial, it will be presumed that such witnesses were duly sworn."; Langford v. United States, 4 Ind.T. 567, 76 S.W. 111, 4 Ann.Cas. 1021.

6 It has been held in some cases that the objection comes too late even where the fact that a witness was not sworn was not discovered until after the trial. Barnes v. State, 61 Tex.Cr.R. 37, 45, 133 S.W. 887, 891.

7 3 Wigmore, Evidence (2d ed. 1923) § 1747. See Chesapeake & O. R. Co. v. Mears, 4 Cir., 64 F.2d 291, certiorari denied, 293 U.S. 557, 55 S.Ct. 69, 79 L.Ed. 659; State v. McLaughlin, 138 La. 958, 70 So. 925; Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338; Washington and Georgetown R. R. v. McLane, 11 App.D.C. 220; Solice v. State, 21

constitutes a spontaneous utterance such as will bring it within this exception to the hearsay rule must depend, necessarily, upon the facts peculiar to each case, and be determined by the exercise of sound judicial discretion, which should not be disturbed on appeal unless clearly erroneous.[8]

■ That the statements in the present case were made in response to inquiry is not decisive of the question of spontaneity, as appellant contends, although that fact is entitled to consideration.[9] Likewise, while the time element is important, it is not in itself controlling. "Indeed, as has been well asserted, no inflexible rule as to the length of interval between the act charged against the accused and the declaration of the complaining party, can be laid down as established."[10] It has been held, moreover, that where, as in the present case, the victim is of such an age as to render it improbable that her utterance was deliberate and its effect premeditated, the utterance need not be so nearly contemporaneous with the principal transaction "as in the case of an older person, whose reflective powers are not presumed to be so easily affected or kept in abeyance."[11] The declarations of the child—a party to the actual occurrence—were made under such circumstances and so recently after the occurrence of the transaction as to preclude the idea of reflection or deliberation. Therefore, the ruling of the lower court was correct.[12]

■ Appellant next contends that the facts, even if admitted to be true, do not in law constitute the crime of assault. He quotes the District of Columbia Code,[13] and several authorities which define assault. But he correctly states in his brief that assault as contemplated by the statute "is common law assault, which is defined in various ways * * *."[14] In

---

Ariz. 592, 193 P. 19; People v. Del Vermo, 192 N.Y. 470, 484, 85 N.E. 690, 695: "Strictly speaking, the spontaneous declaration there under consideration did not really form part of the res gestæ, as being itself a verbal act contemporaneous with the principal occurrence; for the exclamation was uttered after the act of stabbing had been wholly completed and after the assailant had fled, although it is true that the time which had elapsed was very short. The decision, therefore, is clearly an authority for the admissibility of proof of such exclamations relative to an injury, provided they are of the character and are made under the conditions which have already been stated, although they are subsequent in point of time to the infliction of the injury. If they are the impulsive or instinctive outcome of the act, they need not be strictly contemporaneous in order to render them admissible. Mr. Wigmore cites a large number of decisions in support of this doctrine, which I will denominate for convenience the 'spontaneous exclamation exception' to the hearsay rule"; Morgan, A Suggested Classification of Utterances Admissible as Res Gestæ, 31 Yale L.J. 229; Chafee, The Progress of the Law, 35 Harv.L. Rev. 428, 447.

8 Kressin v. Chicago & N. W. Ry., 194 Wis. 480, 486, 215 N.W. 908, 910; Soto v. Territory, 12 Ariz. 36, 94 P. 1104; Pittsburgh, C., C. & St. L. Ry. Co. v. Haislup, 39 Ind.App. 394, 79 N.E. 1035; Roach v. Great Northern Ry., 133 Minn. 257, 158 N.W. 232, affirmed 242 U.S. 624, 37 S.Ct. 245, 61 L.Ed. 534; 3 Wigmore, Evidence (2d ed. 1923) § 1750.

9 Hobbs v. State, 55 Tex.Cr.R. 299, 117 S.W. 811; Smith v. Southern Illinois & Missouri Bridge Co., 326 Mo. 109, 128, 30 S.W.2d 1077, 1086. But see Cumberland Gasoline Corp. v. Fields' Adm'r, 258 Ky. 417, 80 S.W.2d 28. See also, State v. McLaughlin, 138 La. 958, 962, 70 So. 925, 926. Cf. State of New Mexico v. Ellison, 19 N.M. 428, 438, 439, 144 P. 10, 13.

10 Snowden v. United States, 2 App. D.C. 89, 94. See Wicker v. Scott, 6 Cir., 29 F.2d 807, 809; Kressin v. Chicago & N. W. Ry., 194 Wis. 480, 215 N.W. 908. Cf. Harris v. United States, 50 App.D.C. 139, 269 F. 481.

11 Soto v. Territory, 12 Ariz. 36, 94 P. 1104, 1105.

12 Cf. Kehan v. Washington Ry. & Elec. Co., 28 App.D.C. 108, 115, 116; State of Ohio v. Lasecki, 90 Ohio St. 10, 18, 106 N.E. 660, 663, L.R.A.1915E, 202, Ann.Cas.1916C, 1182.

As the testimony is admissible as a spontaneous statement, it is unnecessary to consider whether it is admissible under the complaint theory of the rape and other sex cases. For a general discussion of this theory, see 2 Wigmore, Evidence (2d ed. 1923) §§ 1134, 1135 (notes 6, 10, 11), 1139, 1140.

13 D.C.Code (1929) tit. 6, § 29: "Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than five hundred dollars, or be imprisoned not more than twelve months, or both."

14 An assault has been defined by this court to be "an attempt with force or violence to do a corporal injury to an-

fact, there are several other definitions of assault in the Code,[15] and in addition the offense prescribed in Section 37 of Title 6, while not expressed in terms of *assault*, comes within the common law concept of that offense.[16]

At common law, it was generally held that a man who took improper liberties with the person of a female, without her consent, was guilty of assault.[17] Every female has a "right to absolute security against any attempt to violate her person." Alexander v. Blodgett, 44 Vt. 476, 479. The attempt need not be made violently, insolently, or in anger. Such assaults are not made in that way.[18] Hence, to stand in proximity to a young girl in a state of indecent exposure with intent to ravish has been held to be an assault. Hays v. People, 1 Hill, N.Y., 351. So, too, it was held to be an assault to give to a girl figs containing "love powders", which she ate and which made her ill.[19] And, again, it was held to be an assault to sit on the bed of a girl and lean over her with a proffer of sexual intercourse.[20] When an assault is committed upon a child, it is immaterial whether there is submission or resistance thereto.[21] As was said in a New York case: "Young girls, without knowledge, or experience, of the enormity of outrages of this nature, cannot be expected to make the same degree of resistance to them that others would be inclined to, having a proper appreciation of the injury they would cause to their persons, and their positions in society. They are more especially for that reason within the necessary protection of the law, and where persons take advantage of their ignorance and inexperience for the purpose of violating, outraging, or indecently interfering with their persons, and no actual assent is given to the act, an offense against it is committed."[22]

In a case such as the present, threat or danger of physical suffering or injury in the ordinary sense is not necessary. The injury suffered by the innocent victim

other; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." Patterson v. Pillans, 43 App.D.C. 505. See Anderson v. Crawford, 8 Cir., 265 F. 504.

[15] D.C.Code (1929) tit. 6, §§ 26, 27, 28, 30.

[16] D.C.Code (1929) tit. 6, § 37: "Any person who shall torture, cruelly beat, abuse, or otherwise willfully maltreat any child under the age of eighteen years; or any person, having the custody and possession of a child under the age of fourteen years, who shall expose, or aid and abet in exposing, such child in any highway, street, field, house, outhouse, or other place, with intent to abandon it; * * *." See Commonwealth v. Stoddard, 9 Allen, Mass., 280; Regina v. March, 1 Car. & K. [Eng.] 496; Pallis v. State, 123 Ala. 12, 26 So. 339, 82 Am. St.Rep. 106.

[17] State v. West, 39 Minn. 321, 40 N. W. 249; Walker v. State, 132 Ala. 11, 31 So. 557; Commonwealth v. Merrill, 14 Gray, Mass., 415, 416, 417, 77 Am. Dec. 336; State v. Fulkerson, 97 Mo. App. 599, 71 S.W. 704.

[18] Martin v. Jansen, 113 Wash. 290, 193 P. 674, affirmed, 113 Wash. 290, 198 P. 393 (civil case). See Lynch v. Commonwealth, 131 Va. 762, 109 S.E.

427; Goodrum v. State of Georgia, 60 Ga. 509, 510, 511: "If to put the arm, though tenderly, about the neck of another man's wife, against her will, is not an assault and battery, what is it? Surely, the matrons of the land are not exposed to such an indignity at the pleasure of every libertine * * *. The slightest touching of another in anger is a battery. To touch a virtuous wife in the way of illicit love is a far greater outrage than to touch her in anger, and equally a breach of the peace. It is violence proceeding from lust, instead of violence proceeding from rage. It issues from the passion which, unrestrained, culminates in rape, instead of from the passion which culminates in homicide."

[19] Commonwealth v. Stratton, 114 Mass. 303, 19 Am.Rep. 350.

[20] Newell v. Whitcher, 53 Vt. 589, 38 Am.Rep. 703. Cf. Laxson v. State, 21 Ala.App. 19, 104 So. 872; State v. White, 52 Mo.App. 285; Reed v. Maley, 115 Ky. 816; 74 S.W. 1079, 62 L.R.A. 900, 2 Ann.Cas. 453; Prince v. Ridge, 32 Misc. 666, 66 N.Y.S. 454.

[21] People v. Dong Pok Yip, 164 Cal. 143, 147, 127 P. 1031, 1032. See Hill v. State, 37 Tex.Cr.R. 279, 38 S.W. 987, 39 S.W. 666, 66 Am.St.Rep. 812.

[22] People ex rel. Engel v. Justices, 18 Hun, N.Y., 330, 332. See Rogers v. State, 40 Tex.Cr.R. 355, 50 S.W. 338; Cliver v. State, 45 N.J.L. 46; Dekelt v. People, 44 Colo. 525, 99 P. 330.

may be the fear, shame, humiliation, and mental anguish caused by the assault.[23] Neither is it necessary that such a victim should be aware of the nature of the act or of the danger.[24]

Nor is it material that it was the hand of the child which touched the body of appellant, thus reversing the ordinary fact situation present in an assault. Under the circumstances of the present case it is the same as if appellant had placed his body in contact with the child, or had held her hand and forced it to do his bidding. It is a well-recognized principle that the application of force, or threat of application thereof, in an assault may be made indirectly as well as directly.[25] In fact, it is a general principle of criminal law that one may be guilty of a crime, where the prohibited act is committed through the agency of mechanical or chemical means, as by instruments, poison or powder,[26] or by an animal, a child or other innocent agent acting under the direction and compulsion of the accused.[27]

In the present case this little girl was both the victim and the innocent agent of the appellant in the crime of which he was convicted.[28]

Affirmed.

[23] Hill v. State, 37 Tex.Cr.R. 279, 281, 38 S.W. 987, 988, 39 S.W. 666, 66 Am.St. Rep. 812. Cf. Clark v. Associated Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62; Axman v. Washington Gaslight Co., 38 App.D.C. 150, 160; Stockwell v. Gee, 121 Okl. 207, 249 P. 389.

[24] See Ross v. State, 16 Wyo. 285, 299, 93 P. 299, 303, 94 P. 217; People v. Lilley, 43 Mich. 521, 525, 5 N.W. 982, 985; People v. Pape, 66 Cal. 366, 5 P. 621; Commonwealth v. Stratton, 114 Mass. 303, 19 Am.Rep. 350.

[25] Hays v. People, 1 Hill, N.Y., 351; Mead's and Belt's Case, 1 Lew.C.C. [Eng.] 184 (attack upon dwelling); Schmitt v. Kurrus, 234 Ill. 578, 85 N.E. 261 (striking a glass door); Note, 29 Mich.L.Rev. 87, 89 et seq.

[26] Seifert v. State, 160 Ind. 464, 67 N. E. 100, 98 Am.St.Rep. 340; People v. Pape, 66 Cal. 366, 5 P. 621; Johnson v. State, 92 Ga. 36, 17 S.E. 974; Commonwealth v. Stratton, 114 Mass. 303, 19 Am.Rep. 350.

[27] Maxey v. United States, 30 App.D. C. 63, 75; Collins v. State, 3 Heisk., Tenn., 14 (child); Johnson v. State, 142 Ala. 70, 38 So. 182, 2 L.R.A.,N.S., 897 (lunatic); Queen v. Manley, 1 Cox Cr. Cas. [Eng.] 104 (child); State of Vermont v. Learnard, 41 Vt. 585 (child); Adams v. People, 1 N.Y. 173.

[28] See People ex rel. Gow v. Bingham, 57 Misc. 66, 107 N.Y.S. 1011, 1014: "There are certain rights pertaining to mankind which have their origin independent of any express provision of law, and which are termed 'natural rights.' One of these is the right of personal liberty. This includes not only absolute freedom to every one to go where and when he pleases, but the right to preserve his person inviolate from attack by any other person. This right to one's person may be said to be a right of complete immunity, to be let alone. * * * The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow." Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 252, 11 S.Ct. 1000, 1001, 35 L.Ed. 734: "To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; * * *" Cf. Rex v. Rosinski, 1 Moody C.C. [Eng.] 19.