# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01332-COA

DONNIE SYLVESTER                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                 APPELLEE

DATE OF JUDGMENT:            07/18/2013
TRIAL JUDGE:                 HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:   PERRY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      DONNIE SYLVESTER (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:     MOTION FOR POST-CONVICTION RELIEF
                             DENIED
DISPOSITION:                 AFFIRMED - 12/09/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ROBERTS, CARLTON AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     After pleading guilty to drive-by shooting and aggravated assault, Donnie Sylvester raised ineffective-assistance-of-counsel and involuntary-plea claims in a post-conviction relief (PCR) action. Sylvester's chief argument is that his trial attorney wrongly advised him he would be released from the Mississippi Department of Corrections (MDOC) early because of earned-time allowances. But Sylvester's trial lawyer testified he does not make earned-time projections for clients since these allowances are by no means guaranteed and are within MDOC's sole discretion.

¶2.     The circuit judge found the lawyer's testimony more credible than the contradictory

allegations in Sylvester's and his sister's affidavits. The judge also noted that Sylvester's representations during his plea colloquy about his understanding of the sentences he faced refuted his main PCR claims. After review, we find no error in the trial judge's denial of Sylvester's PCR claims. We affirm.

## Facts and Procedural History

¶3. On September 2, 2009, Sylvester entered guilty pleas to drive-by shooting[1] and aggravated assault.[2] The court sentenced him to thirty years, with fifteen years to serve and fifteen suspended and five years of post-release supervision, for drive-by shooting. Sylvester received fifteen concurrent years for aggravated assault.

¶4. He later filed a PCR motion alleging his plea was involuntary and his attorney was ineffective. The gist of Sylvester's voluntariness and ineffective-assistance-of-counsel arguments is that he would not have pled guilty had he been advised he would have to actually serve more than five years. He claimed his attorney incorrectly told him he would receive earned-time, trusty-earned-time, and meritorious-earned-time allowances and would be released on post-release supervision after serving just five years. His motion was supported by an affidavit from his sister saying essentially the same thing.

¶5. Though the circuit judge summarily dismissed Sylvester's PCR motion, this court reversed and remanded for an evidentiary hearing on the merits because his sister's third-

---

[1] Miss. Code Ann. § 97-3-109 (Rev. 2014).

[2] Miss. Code Ann. § 97-3-7(2) (Rev. 2014).

party affidavit created a factual question. *Sylvester v. State*, 113 So. 3d 618, 623-24 (¶¶19-20) (Miss. Ct. App. 2013). At the hearing on remand, Sylvester's trial attorney, Eric Tiebauer, maintained he did not tell Sylvester he would get earned time because he always counsels his clients that these allowances are regulated by the MDOC. The circuit judge considered Sylvester's and his sister's competing affidavits, ultimately finding Tiebauer's testimony more credible. Thus, the judge denied Sylvester's PCR motion.

¶6. Sylvester appealed, again raising the same issues as his earlier motion, along with other supposed errors he claimed occurred at his PCR hearing.

**Discussion**

¶7. In considering the denial of a PCR motion, "we review the trial court's findings of fact for clear error and its determinations of law de novo." *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011). The burden is on the PCR movant to show by a preponderance of the evidence that he is entitled to relief. *Id*.

> **I. MDOC Has Authority Over Trusty-Time, Earned-Time, and Meritorious-Earned-Time Allowances**

¶8. Sylvester first argues the circuit judge misunderstood the law about earned-time allowances. He seizes on the judge's remark that he could not "imagine any lawyer advising a client as to what the Mississippi Department of Corrections would do[.]" It appears Sylvester believes courts or lawyers have some say over earned-time, trusty-earned-time, and meritorious-earned-time allowances. But this is not so.

¶9. The Legislature clearly empowered MDOC with sole authority to grant these types

3

of allowances.[3]   And here, the circuit judge was merely commenting that attorneys are unlikely to predict or assure a client what MDOC might do, since "correctional officials are vested with discretionary power to award time under certain conditions and, therefore, inmates are not entitled to it."  *See Ross v. State*, 584 So. 2d 777, 779 (Miss. 1991).  Thus, we find the judge's remark tends to show his correct appreciation of MDOC's discretionary authority, not a misunderstanding of the law.

## II.      Ineffective Assistance of Counsel

¶10.    Sylvester also makes ineffective-assistance-of-counsel claims against both his trial and PCR attorneys.  Sylvester argues his trial attorney, Tiebauer, was ineffective for advising him he would be released early under earned-time provisions.  And he argues his PCR attorney was ineffective for not objecting at the evidentiary hearing to Tiebauer's testimony about reviewing his file before the hearing.

---

[3]   *See* Miss. Code Ann. § 47-5-138.1 (Rev. 2011) ("[A]n offender in trusty status *as defined by the classification board of the* [*MDOC*] may be awarded a trusty-time allowance of thirty (30) days' reduction of sentence for each thirty (30) days of participation . . . .") (emphasis added); Miss. Code Ann. § 47-5-138(5) (Supp. 2014) ("[A]ny inmate may receive an earned time allowance of four and one-half (4½) days for each thirty (30) days served *if the department determines* that the inmate has complied with the good conduct and performance requirements of the earned time allowance program.") (emphasis added); Miss. Code Ann. § 47-5-138(6) (Supp. 2014) ("The *department* shall develop rules, terms and conditions for the earned-release program," and "[t]he *commissioner* shall designate the appropriate hearing officer *within the department* to conduct revocation hearings for inmates violating the conditions of earned-release supervision.") (emphasis added); Miss. Code Ann. § 47-5-142(2) (Rev. 2011) ("Subject to *approval by the commissioner* of the terms and conditions of the program or project, meritorious earned time may be awarded . . . .") (emphasis added); *Ross v. State*, 584 So. 2d 777, 779 (Miss. 1991) (noting that "correctional officials are vested with discretionary power to award time under certain conditions and, therefore, inmates are not entitled to it").

4

¶11.    To prove ineffective assistance of counsel, Sylvester must show: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The burden of proof rests with Sylvester to prove both prongs. *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990). Under *Strickland*, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### A.    Trial Attorney

¶12.    Sylvester's claim against his trial lawyer, Tiebauer, is twofold. His first assertion is that Tiebauer lacked sufficient knowledge to counsel him about how much time he would serve. He takes issue Tiebauer's testimony that "before reading the [court of appeals'] opinion, I thought the trust[y] and earned time credit was a [MDOC] regulation, and I wasn't even aware it was a statute."

¶13.    While these earned-time allowances are statutory, as already noted, the Legislature granted MDOC authority over these allowances. And Sylvester fails to show how his result would have been different had the allowance programs been rooted purely in an MDOC-created regulation. So the attorney's misunderstanding was immaterial.

¶14.    As to Sylvester's second and main complaint against his trial lawyer, he claims Tiebauer advised him that for "drive-by-shooting, the judge agreed to impose 30 years, 15 years to serve, 5 years post[-]release supervision." He also suggests Tiebauer assured him

5

he would "receive trusty earned time, 30 days reduction of sentence for every 30 days served, as well as meritorious earned time, 10 days reduction for every 30 days served, and that's if you don't qualify for 25% . . . ." And he told Sylvester he would "only have to serve another 5 years and [then] be released on post-release supervision."

¶15. But at the PCR hearing, Tiebauer disputed Sylvester's story. He did not recall telling Sylvester he would get "trust[y] time and earned credit." As Tiebauer put it, "I've never done that. I always say that the [MDOC's] regulations are totally done by the [MDOC]." Instead, Tiebauer maintained that if he made any representation it was that "there are regulations under the [MDOC] under which I've got no control that, you know, [MDOC] may cut the time. . . . But as far as promising him thirty-for-thirty under the trust[y] or the earned credit, I don't recall doing that nor is there anything in my file, you know, notating that I did that." Tiebauer also did not recall telling Sylvester's sister Sylvester would get thirty days' credit for thirty days served. When pressed, Tiebauer admitted it was possible he said that, but it is not something he "would normally say," since he always advises his clients the MDOC governs these allowances.

¶16. While Sylvester argues the circuit judge should have found his and his sister's affidavits more believable than Tiebauer's testimony, that credibility call is for the trial judge, not the appellate court. *Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006) ("[T]he trial judge . . . as the trier of fact, has sole authority for determining credibility of the witnesses."). And after review, based on the testimony and affidavits before the court, we find it was within the judge's discretion to conclude Tiebauer did not give erroneous advice

6

that prejudiced Sylvester. Thus, we cannot say the trial judge clearly erred in finding Sylvester failed to prove a viable *Strickland*-based claim against Tiebauer.

### B. PCR Attorney

¶17. Sylvester also complains about his PCR attorney, Dennis DeBar. Sylvester insists DeBar was ineffective for not objecting at the hearing each time Tiebauer said he had reviewed his "notes" or his "file." As support, he cites Mississippi's "best-evidence rule." *See* M.R.E. 1002 ("To prove the content of a writing, recording or photograph, the original writing, recording, or photograph is required, except as otherwise provided by law.").

¶18. The record shows Tiebauer testified he had "read the discovery," his "notes," the "plea offer," and "the court of appeals' decision" before the hearing. But the State did not offer copies of these documents at the hearing, nor did the court admit any of them. And Sylvester has not shown why his trial attorney should have objected to Tiebauer's testimony.

¶19. Even if Sylvester had come forward with a legitimate basis for an objection, generally a lawyer's "choice of whether or not to file certain motions . . . or make certain objections fall[s] within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Jackson v. State*, 815 So. 2d 1196, 1200 (¶8) (Miss. 2002) (citation and quotations omitted); *see also Turner v. State*, 953 So. 2d 1063, 1073 (¶36) (Miss. 2007). Instead, for prejudice to exist, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. And here Sylvester has not pointed to anything in Tiebauer's file that undermines his testimony or that, if offered, would have resulted in a different outcome.

7

¶20. So Sylvester has failed to show a deficiency, much less prejudice, on his PCR attorney's part.

### III. Voluntariness of Plea

¶21. Sylvester's next challenge is to the voluntariness of his guilty pleas. Sylvester disagrees with the judge's finding at the PCR hearing that his voluntariness claims were undermined by his plea colloquy. The judge remarked:

> Okay. Basically we have [Sylvester] and his sister saying [Tiebauer] told [Sylvester] that he would get thirty-for-thirty time, and we've got [Tiebauer], on the other hand, saying I've been practicing law twenty years, and that's not something I do. I tend to believe [Tiebauer]. But even if he told him that, the fact that [Sylvester] stood before this court and was asked something to the effect: You understand the court is not bound by any recommendation that the State or district attorney may make, but it's the court itself that is going to determine what your sentence shall be? And his response was: Yes. . . . I asked him if anybody promised him anything? He said, No. . . . I asked him if anybody told him that the court would be lighter on him by entering a plea of guilty? He said, No. Based on all of this, [Sylvester], I'm going to deny your motion. I just don't think you've met your burden.

¶22. A guilty plea is binding when it is voluntary, knowing, and intelligent. *Hill v. State*, 60 So. 3d 824, 828 (¶11) (Miss. Ct. App. 2011). As to Sylvester's challenge to the voluntariness of his guilty plea, we note that criminal defendants face a "high hurdle in recanting" sworn statements from a plea hearing. *Pevey v. State*, 914 So. 2d 1287, 1290 (¶8) (Miss. Ct. App. 2005) (citing *Calvert v. State*, 726 So. 2d 228, 231 (¶10) (Miss. Ct. App. 1998)). After review, we cannot say the judge clearly erred by relying on Sylvester's prior sworn representations that his attorney had not promised him a specific sentence. The burden remained with Sylvester to prove he was entitled to post-conviction relief. And these earlier

8

representations alone were enough for the judge to reject Sylvester's voluntariness challenge.

### IV. Sylvester's and His Sister's Affidavits

¶23. Sylvester's PCR attorney, DeBar, proposed to the court that he could either call Sylvester and his sister as witnesses or simply conclude the hearing by arguing Sylvester's claims to the court. The judge suggested to just argue the case. DeBar said he was "fine" with that approach. Just to be sure the affidavits sufficiently described Sylvester's and his sister's proposed testimony, the judge asked DeBar if "the affidavits that were submitted with the PCR is what the testimony would be. Correct?" And DeBar told the judge the only thing Sylvester's sister "would testify further that was not in her affidavit was . . . her conversation with her brother, [Sylvester]. I think she would add to the fact that if he would not have received the advice on the thirty-for-thirty and the trustee-earned time, he would have went to trial[.]" Though DeBar mentioned, "if the [c]ourt wants that on the record or the State, we can do that," he did not call Sylvester's sister to bolster the record. Even so, our review shows the gist of his sister's proposed additional testimony was already covered in her affidavit.

¶24. At a PCR hearing, "[t]he court may receive proof by affidavits" or "oral testimony[.]" *See* Miss. Code Ann. § 99-39-23(4) (Supp. 2014). And it is obvious Sylvester's PCR attorney was agreeable to the court's approach, since he not only proposed the idea but also did not object to foregoing live testimony. Because Sylvester did not object to proceeding in this manner, this issue is waived on appeal.

### V. Sylvester Waived the Witness Oath

9

¶25. After each side briefly argued their case, the parties stipulated that, if called, Tiebauer would testify "he did not give [Sylvester] advice as far as the earned credit and things of that nature - - the early-release mechanisms." Still, the circuit judge thought it best that Tiebauer be required to testify on the record.

¶26. Before Tiebauer took the stand, the judge asked both sides: "Ya'll waive the oath[?] I mean, he is an officer of the [c]ourt." The State responded, "Yes, certainly." And Sylvester's attorney did not object to waiving the oath. Tiebauer then proceeded to testify.

¶27. On appeal, Sylvester ignores the waiver and argues it was error for the judge to allow Tiebauer to testify without being sworn. He cites Mississippi Rule of Evidence 603, which states: "Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so."

¶28. The Mississippi Supreme Court has not addressed a case where a party has waived the oath requirement. But this court has confronted a situation where two witnesses gave unsworn testimony, then later affirmed under oath that their testimony was true and correct. *Harbit v. Harbit*, 3 So. 3d 156, 159 (¶8) (Miss. Ct. App. 2009). We found this remedial action cured the initial failure to swear the witnesses. *Id*. We relied on several cases from other courts that we deemed "quite persuasive." *Id.* at 160 (¶14).

¶29. In one of the them, *United States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981), the Fifth Circuit "noted that the general rule is that the failure to swear a witness may be waived."

*Harbit*, 3 So. 3d at 160 (¶11). And waiver may also "occur by knowing silence and an attempt to raise objection after verdict or by the mere failure of counsel to notice the omission before completion of trial." *Id*. This reasoning mirrors that of *Beausoliel v. United States*, 107 F.2d 292, 294 (D.C. Cir. 1939), a case from the D.C. Circuit, which we also cited in *Harbit.* The *Beausoliel* court observed "that the irregular administration of the oath to a witness, or the taking of testimony without an oath at all, must, if known to the adverse party, be objected to at the time." *Id*. So a defendant "may not, with knowledge of the irregularity, permit the trial to proceed, and raise the question after verdict." *Id.* Texas courts also recognize that a party can waive the oath requirement by failing to object to testimony when the party knows or should know an objection is necessary. *See Garcia v. Banda*, 935 S.W.2d 790, 793 (Tex. Ct. App. 1996) (overruled on other grounds) (citing *Fullenwider v. Am. Guar. & Liab. Ins. Co.*, 821 S.W.2d 658, 662 (Tex. Ct. App. 1991); *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex. Ct. App. 1989)); *see also Beck v. State*, 719 S.W.2d 205, 213 (Tex. Crim. App. 1986).

¶30. We find this reasoning about waiver is sound and equally applicable to PCR proceedings. Thus, we find Sylvester's failure to object was a waiver of the oath requirement.

### VI.    In-Chambers Meeting

¶31. Sylvester submitted affidavits from his sister and Nadene Lott, attesting that before the PCR hearing, they saw Tiebauer enter the circuit judge's chambers. Neither affiant specified how long the two were in chambers or what the alleged wrongful conduct was.

11

Based on the record, we cannot conclude any improper conduct occurred.

### VII.    Cumulative Errors

¶32.    Under the cumulative-error doctrine, "individual errors, not reversible in themselves, may combine with other errors to make up reversible error." *Wilburn v. State*, 608 So. 2d 702, 705 (Miss. 1992).  Since we find no error in the circuit judge's findings, there can be no cumulative error.  We affirm.

¶33.    **THE JUDGMENT OF THE PERRY COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO PERRY COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.**