Lucille **FULLENWIDER**, Appellant,

v.

**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**, Appellee.

No. 04–90–00601–CV.

Court of Appeals of Texas, San Antonio.

Oct. 16, 1991.

Rehearing Denied Jan. 2, 1992.

1.   TEX.PRAC. & REM.CODE § 101.002 (Vernon Supp.      1986)

Arthur Vega, Herrera, Vega & Rocha, Inc., Jo Chris G. Lopez, Shaddox, Compere, Walraven & Good, P.C., San Antonio, for appellant.

John Milano, Jr., Susan Stone, Thornton, Summers, Biechlin, Dunham & Brown, Inc., San Antonio, for appellee.

Before CARR, GARCIA and BISSETT,[1] JJ.

BISSETT, Justice, Assigned.

This is an appeal by Lucille Fullenwider ("plaintiff") from a judgment rendered in a worker's compensation case which resulted in a jury verdict in favor of American Guar-

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

antee & Liability Insurance Company ("defendant").

The sole issue in this case is whether the trial court erred in permitting two undisclosed expert witnesses to testify when interrogatories requesting the names of all expert witnesses were not supplemented thirty days prior to trial, in accordance with the provisions of TEX.R.CIV.P. 166b(6)(b).

Defendant brought suit against plaintiff for a trial de novo to set aside the award of the Industrial Accident Board. Suit was filed on November 30, 1988. The parties were re-aligned on October 20, 1989, whereby Lucille Fullenwider became plaintiff and American Guarantee & Liability Insurance Company became defendant.

Trial to a jury commenced on March 12, 1990. The jury found that plaintiff did not receive an occupational injury on or about September 25, 1987. Judgment was signed on July 21, 1990, that plaintiff take nothing.

Plaintiff alleged that she was an employee of Motorola, Inc. ("Motorola"); and that on or about September 25, 1987, while at work, she developed industrial asthma as a result of working at Motorola, Inc. She further alleged that "[t]hese injuries have rendered her unable to do the ordinary and usual tasks of a worker to such an extent that she cannot get and keep employment performing the ordinary and usual tasks of a worker, and therefore she is totally and permanently incapacitated within the meaning of the Texas Workers' Compensation Act."

On March 12, 1990, the first day of trial, and before the case proceeded to trial before the jury, defendant's counsel requested leave of court to supplement the answers to plaintiff's interrogatories in order to designate Dr. Albert Cobb and Dr. John P. Winikates as expert witnesses.[2] Accordingly to statements made by the attorneys to the court, plaintiff had previously served defendant with at least 17 interrogatories,

2. The record does not contain a copy of a motion made by defendant's counsel to supplement defendant's answers to interrogatories previously filed.

which were answered by defendant.[3] No evidence, documentary or testimonial, was introduced by defendant in its request (motion) to supplement. However, counsel for defendant told the court:

> [w]e had originally answered the Plaintiff's interrogatories listing all of the Plaintiff's treating physicians, including, without limitation, ... Dr. Albert Cobb; ... Dr. John Winikates....
>
> This was a supplement to Interrogatory 15 to Plaintiff's interrogatories to Defendant and it appears from a review of the actual question that that particular response should have been on November 16.

Apparently, Interrogatory 15 asked defendant to disclose the names of all persons having knowledge of the facts, whereas Interrogatory 16 asked defendant to list the names of the experts that it intended to call as witnesses. The briefs so indicate.

Counsel for defendant argued that his request should be granted because: 1) there is no surprise to plaintiff and her case would not be prejudiced by granting leave to supplement the answers to the interrogatories; 2) the failure to name Dr. Cobb and Dr. Winikates as "experts" in response to Interrogatory 16 was due to inadvertence and mistake of defendant's counsel; 3) Dr. Cobb and Dr. Winikates were named as plaintiff's treating physicians who had knowledge of relevant facts; and 4) plaintiff knew that defendant intended to call the physicians as expert witnesses because their depositions had been taken prior to trial.

Plaintiff objected to the granting of defendant's request or motion, as the case may be. The trial court made the following ruling:

> You all listen carefully. Number One, the motion for leave of court to supplement answers to interrogatories as presented relating to 16, as presented in the motion, is granted.
>
> Number two, if counsel for the defense asks leave to re-number 15 to 16, the Court will grant it under Rule 1 of the Texas Rules of Civil Procedure in the

interest of justice. And that is the ruling of the court.

> So your motion for leave is denied and did you make that motion for the court to grant the renumbering?

Whereupon, counsel for defendant said:

> Yes, to grant renumbering of our interrogatory answers 15 and 16.

The trial court then stated:

> That is granted in the interest of justice under Rule 1.

Counsel for both parties admit in their briefs that Dr. Cobb and Dr. Winikates were listed as fact witnesses pursuant to interrogatory 15 and were not listed as expert witnesses pursuant to interrogatory 16. We treat those facts as being properly before us even though, as already noted, the interrogatories and answers themselves are not in the record filed in this Court.

At trial, when counsel for defendant announced that he was calling Dr. Cobb and Dr. Winikates as witnesses, counsel for plaintiff again objected on the ground that they were undisclosed expert witnesses and the subject matter of their testimony as experts had not been timely or properly disclosed. The objection was overruled. The witnesses testified by deposition. Both parties read portions of the depositions to the jury.

Plaintiff presents six points of error. She claims that the trial court erred in admitting the testimony of two undisclosed witnesses because: 1) "the names of all expert witnesses were not supplemented 30 days prior to trial as required by Rule 215(5)"; and 2) defendant "failed to show good cause sufficient to require the admission of the expert testimony." She further claims that the trial court abused its discretion in admitting the testimony of undisclosed expert witnesses because: 1) "no finding of good cause sufficient to require admission of the expert testimony was made by the court"; 2) the trial court permitted "counsel to re-number responses to interrogatories so as to designate persons initially listed as person[s] with knowledge of relevant facts as expert witnesses"; and

3. The record does not contain a copy of the interrogatories and the answers thereto.

3) the trial court failed to act in conformity with "guiding rules and principles" in admitting "the testimony of undisclosed expert witness under Rule 1 of the Texas Rules of Civil Procedure." She also contends that the trial court's action in admitting into evidence "the testimony of undisclosed expert witnesses was such a denial of the rights of [a]ppellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment." Since all of the points are closely related, they will be discussed together.

TEX.R.CIV.P. 166b(6) provides in relevant part:

A party who has responded to a request for discovery that was correct and complete when made is under no duty to supplement his response to include information thereafter acquired, except the following shall be supplemented not less than thirty days prior to the beginning of trial unless the court finds that a good cause exists for permitting or requiring later supplementation.

\* \* \* \* \* \*

b. If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

TEX.R.CIV.P. 215(5), in effect at the time this case was tried, provides:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admis-

sion exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

The law concerning a party's obligation to fully and timely designate expert witnesses when asked to do so by timely filed interrogatories has been the subject of two recent decisions by the Supreme Court of Texas. *See Alvarado v. Farah Mfg. Co., Inc.,* 34 S.Ct.J. 107 (November 21, 1990) (pending mtn. for reh'g); *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex. 1990). Both cases reviewed the supreme court decisions written on the subject of whether a witness who was not identified in response to a discovery request should have been allowed to testify at trial. A review of those two decisions and the cases cited therein show that the law is well settled that: 1) the salutary purpose of Rule 215(5) is to require complete responses to discovery so as to prevent trial by ambush; *Clark v. Trailways, Inc.,* 774 S.W.2d 644, 646 (Tex.1989), *cert. denied sub. nom., Transportes del Norte v. Clark,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990); 2) a party has an affirmative duty to identify expert witnesses in response to an appropriate inquiry, *Sharp,* 784 S.W.2d at 671; 3) the sanction for failure to comply with TEX.R.CIV.P. 166b(6)(b) is the automatic exclusion of the unidentified witness' testimony, *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex. 1986); 4) however, if the trial court finds that the party offering the testimony had good cause for failing to properly and timely disclose the names of expert witnesses, it may, in its discretion, admit the testimony, *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); 5) the party offering the testimony has the burden of showing good cause for its failure to timely and properly designate expert witness when asked to do so by timely and properly filed interrogatories, *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243, 246 (Tex.1985); 6) lack of surprise to an opposing party is not in itself good cause to allow an undisclosed witness to testify, but may be a factor, *E.F. Hutton & Co. v.*

*Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987); 7) permitting a previously undisclosed witness to testify "in the interest of justice," standing alone, does not constitute good cause, *Alvarado,* 34 S.Ct.J. at 109; 8) the good cause exception permits a trial court to excuse a failure to comply with discovery rules in difficult or impossible circumstances, *Clark,* 774 S.W.2d at 647; 9) an expert witness who has been deposed prior to trial must nevertheless be identified in response to a request for discovery if the witness is permitted to testify at trial, *Alvarado,* 34 S.Ct.J. at 109; 10) identification of witnesses in response to discovery must be in writing, *Sharp,* 784 S.W.2d at 671; 11) in order for an appellant to obtain a reversal of a judgment based upon the trial court's error in admitting or excluding evidence, it must be shown: that the error was reasonably calculated to cause and properly did cause rendition of an improper judgment, *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); and 12) whether the trial court's error in admitting or excluding evidence did cause the rendition of an improper judgment is to be determined in the light of the record as a whole, *McKinney,* 772 S.W.2d at 75; *see also Bridges v. City of Richardson,* 163 Tex. 292, 393, 354 S.W.2d 366, 368 (1962); *Pittman v. Baladez,* 158 Tex. 372, 380, 312 S.W.2d 210, 216 (Tex.1958); TEX.R.APP.P. 81(b)(1).

In the instant case, defendant did not supplement its answers to plaintiff's interrogatories. The sole showing of good cause was the unsworn statements of defendant's attorney, who told the court that the failure to list Dr. Cobb and Dr. Winikates as expert witnesses in response to interrogatory 16 was the result of his mistake and inadvertence.

█ While the attorney for defendant is an officer of the court, his statements, if they are to be considered as evidence, were required to be made under oath, absent a waiver of the oath by the plaintiff. *See Bloom v. Bloom,* 767 S.W.2d 463, 470–71

(Tex.App.—San Antonio 1989, writ denied). However, the attorney for plaintiff in this case allowed defendant's attorney to testify without objection; therefore, he waived the administration of the oath. *See Trammell v. Mount,* 68 Tex. 210, 215, 4 S.W. 377, 379 (1887); *Vogt v. Lee,* 32 S.W.2d 688, 689 (Tex.Civ.App.—Austin 1930, no writ); *Cauble v. Key,* 256 S.W. 654, 655 (Tex.Civ. App.—Austin 1923, no writ); *see also* 37 Tex.Jur.3d, *Evidence* § 653 (1984). Under the circumstances, the unsworn statements made by defendant's attorney could be considered as evidence by the trial court.

█ We hold that the statements made by defendant's attorney do not constitute good cause. Moreover, the trial court did not make an express finding that "good cause sufficient to require admission" of the testimony existed. It merely denied leave to supplement and instead allowed defendant to renumber the interrogatory so that the two physicians, witnesses which were initially listed as fact witnesses, became expert witnesses. However, the effect of the order was the same. The trial court permitted undisclosed expert witnesses to testify over the objections of counsel that the identity of the witnesses and the subject matter of their testimony had not been properly disclosed.

Rather than applying the test for good cause mandated by the Rules of Civil Procedure, the trial court considered Rule 1 and permitted the renumbering and subsequent admission of the undisclosed evidence "in the interests of justice."

Rule 1 only provides that the Rules of Civil Procedure should be liberally construed. This rule has no relevance to the duty of parties to timely respond to and supplement interrogatories. The supreme court has expressly stated that "the interests of justice" is not the appropriate inquiry in determining good cause. In *Alvarado,* the supreme court said:

> [I]n the present case, the trial court permitted a previously undisclosed witness to testify in the interests of justice in getting everything on the table, which this court tries to do when possible.... Although this is certainly a valid consid-

eration in deciding whether to admit testimony of unidentified witnesses, it cannot be permitted to trump the discovery rules.

*Alvarado,* 34 S.Ct.J. at 109.

The excuses of mistake, inadvertence, lack of surprise, and the fact that Dr. Cobb and Dr. Winikates had been deposed prior to trial are insufficient to constitute good cause for allowing them (undisclosed expert witnesses) to testify. The trial court abused its discretion in permitting Dr. Cobb and Dr. Winikates to testify.

■ As already noted, even when a witness has been improperly designated prior to trial, it is not reversible error to allow that witness' testimony unless it constitutes harm to the objecting party. *McKinney,* 772 S.W.2d at 75; *Gee,* 765 S.W.2d at 396; *Klein v. Sporting Goods, Inc.,* 772 S.W.2d 173, 178 (Tex.App.—Houston [14th Dist.] 1989, writ denied). We next determine whether testimony of Dr. Cobb and Dr. Winikates constituted harm to plaintiff.

■ Plaintiff went to work for Motorola at its plant in Seguin, Texas, in January 1984. Her employment was terminated by Motorola in September 1987. During that period of time, she was absent on medical leave from the latter part of 1985 until the first part of 1987; this absence covered about one year. She was again absent on medical leave from about March 1987, until September 1987. She consulted both Dr. Cobb and Dr. Winikates at various times between January 1984 and September 1987.

Plaintiff, on direct examination, testified that when she was symptomatic, she would consult her internist, Dr. Winikates. She was referred by Dr. Winikates to Dr. Cobb, an allergist. These physicians prescribed medications for her. Plaintiff also testified that she had to be hospitalized twice, that Dr. Winikates was her treating physician when she was admitted to the hospital, and that both physicians treated her for her allergies and related symptoms. She further told the jury that she had been a cigarette smoker for 32 years, and that she had a history of nausea, coughing and wheezing.

According to plaintiff, most of her work was performed at either "the soldering wave machine" or the "conformal coating station." Plaintiff stated that she worked about four hours a day for about six months at the soldering machine, which gave off odors that caused her to "sneeze a lot," to "cough a little bit" and to "get headaches." She went to a physician in Seguin who x-rayed her sinuses, and the company nurse at Motorola gave her "Sudafed" for the headaches, coughing and sneezing. She did not take any other medication during this six-month period. Following her work at the soldering machine, she worked for several months at a riveting machine and then was transferred to the conformal coating station, where she "took the panels and brushed them with a brush in some kind of a solution under this little black box—what they call the black light." While working at the conformal coating machine, she said that she was exposed to odors which caused her "a lot of coughing and heaviness in the chest."

At some indefinite time, Dr. Cobb and Dr. Winikates suggested that plaintiff wear a mask to work, and at the end of her last medical leave, she presented a letter from the doctors stating that she could return to work if she wore a mask. Motorola refused "to take her back" with that restriction. The doctors then, at plaintiff's request, "lifted" the restriction. Plaintiff said that her employment was terminated by Motorola when "they said I couldn't pass the component identification test."

During the time in question, plaintiff consulted with Dr. Winikates whenever "she had a problem." She saw Dr. Cobb on three occasions. Dr. Cobb diagnosed her condition as having allergies caused by wheat, mold, house dust, grasses and several types of trees in the Seguin area.

Plaintiff, during cross-examination, testified that both Dr. Cobb and Dr. Winikates noted her complaint that her work environment was contributing to her symptoms, and that both physicians instructed her not to work within *100 feet of the solder wave machine* without a mask. Plaintiff, as al-

ready noted, later requested of both doctors that this "restriction" be lifted. Dr. Cobb performed allergy tests on plaintiff, identifying several substances to which plaintiff exhibited an allergic reaction. Dr. Cobb diagnosed plaintiff's condition as being caused by allergies, and prescribed "shots" for her.

Dr. Cobb's and Dr. Winikates' testimony simply expanded upon and explained matters to which plaintiff had already testified. Dr. Winikates' deposition testimony revealed that when plaintiff first consulted him, she related a history of previous episodes of acute bronchitis, and that she had smoked cigarettes for 40 years. Dr. Winikates acknowledged that some factor in plaintiff's workplace may have contributed to her symptoms, though he never formed an opinion as to how much plaintiff's work environment contributed to her condition. Dr. Winikates further testified that plaintiff was being seen in San Antonio for "industrial lung problems," and he consulted with Dr. Wilen, plaintiff's medical expert in San Antonio, regarding the question of plaintiff's industrial exposure. Both Dr. Cobb and Dr. Winikates noted that plaintiff could possibly have been exposed to solder fumes, as she alleged. Finally, Dr. Winikates testified that plaintiff's work environment, combined with her history of allergies and smoking, could have caused the symptoms which she complained of, and this his final impression was that she suffered from bronchospastic disease, commonly called "industrial asthma." None of this testimony could have been harmful to plaintiff, as Dr. Winikates simply corroborated what plaintiff had already told the jury. He further testified that he deferred questions regarding plaintiff's alleged "industrial exposure" to her pulmonologist, Dr. Wilen, who also testified by deposition as plaintiff's medical expert.

Similarly, Dr. Cobb's deposition testimony simply affirmed that plaintiff had a history of allergies, and that he treated her allergies. He also noted that plaintiff was seeing a pulmonologist, and that he would defer to the pulmonologist (Dr. Wilen) regarding diagnoses or evaluations regarding possible industrial exposure. Dr. Cobb did not test or treat plaintiff for any chemical exposure from work, though he noted that there was "something at work" that was bothering her. Finally, Dr. Cobb testified that there is a distinction between "allergens" and "irritants," and that a reaction to a chemical may be totally separate from any underlying allergies.

The impression left the jury, therefore, was that Dr. Winikates and Dr. Cobb had treated plaintiff for acute bronchospatic attacks and for allergies. Both doctors noted that plaintiff was complaining of exposure to industrial irritants and, if plaintiff had suffered such an exposure, those irritants could contribute to her lung problems. Finally, both doctors deferred to plaintiff's medical expert, Dr. Wilen, regarding specific treatment and evaluation of her alleged industrial exposure.

Plaintiff testified that she was exposed to irritants when she worked at the solder wave machine and the conformal coating machine. Both plaintiff's supervisor, Sheila Hart, and a lead operator, Jo Ann Casarez, disputed such testimony. They testified that plaintiff had never worked at either of these machines; that she had failed her "component identification test," so she was not qualified to work at the solder wave machine. Both Ms. Hart and Ms. Casarez further testified that there were not fumes emanating from the solder wave machine, as plaintiff testified to on direct examination.

John Castner, a Motorola employee since 1977, testified that he was in charge of the installation and maintenance of the equipment and machines in the area where plaintiff worked. Mr. Castner had never seen a vapor or haze in the entire plant, as plaintiff testified. He further testified that the conformal coating machine had been removed from the plant in 1986.

Dr. Harold Kaplan, plaintiff's toxicologist, who was not a medical doctor but has a Ph.D. in toxicology, testified that, according to his information, plaintiff claimed to have worked at the solder wave machine for six months and at the conformal coating station for approximately one and one-

half days. Dr. Kaplan did not do any testing around the solder wave machine, and he did not know the actual concentration of irritants, if any, in the area. Dr. Kaplan did not perform any independent tests or take air samples; he merely "assumed" that aldehydes were released during the soldering process. Since Dr. Kaplan was a toxicologist and not a medical doctor, he could not and did not testify that plaintiff's alleged *sinusitis* and *asthmatic conditions* were caused by an industrial exposure in Motorola's plant.

Defendant's final two experts were Dr. Bob Good, an industrial hygienist, and Dr. Eric Comstock, a medical doctor. Dr. Comstock is board certified in chemical toxicology.

Dr. Good testified that he did four investigations at the Motorola plant, and that there were no odors emanating from the solder wave machine during his investigations. Dr. Good evaluated the ventilation system at the solder wave machine, and stated that, in his opinion, any fumes produced by the machine were sucked out through the air compression system and no fumes could escape to the workers in the plant.

Dr. Comstock went to the Motorola plant on two occasions. Based on the records and information provided to him and on his personal observations, Dr. Comstock's diagnosis of plaintiff was that she had chronic obstructive pulmonary disease, a common result of smoking, and that she suffered from chronic allergic rhinitis, a condition customarily associated with allergies, a condition which was quite common "in the area (Seguin) as a result of allergies occurring because of dust, molds, and the environment." In Dr. Comstock's opinion, these two conditions accounted for 100% of plaintiff's complaint. Dr. Comstock noted that any fumes or rosins produced at the solder wave machine were pushed away through the ventilation system and that there were no fumes present. In his opinion, there was nothing at the Motorola plant which caused plaintiff's problems.

The jury was allowed to weigh and consider all of the evidence; there is no indication that it gave particular weight to Dr. Cobb's or Dr. Winikates' testimony. At the close of the evidence, there was a question whether plaintiff had been exposed to chemicals in her workplace. This question was resolved by the jury in defendant's favor. The combined effect of all the testimony addressed at trial supports the jury's finding that plaintiff did not sustain an occupational disease.

Under the evidence presented, we conclude that plaintiff was not harmed by the testimony of Dr. Cobb and Dr. Winikates. The substance of their testimony was corroborated by the testimony of plaintiff, Dr. Good and Dr. Comstock. Plaintiff did not object to the introduction of the testimony of Dr. Good and Dr. Comstock into evidence. Therefore, the error in admitting the testimony of Dr. Winikates and Dr. Cobb into evidence was rendered harmless since plaintiff subsequently permitted the same or similar evidence to be introduced without objection. *See City of San Antonio v. Vela*, 762 S.W.2d 314, 318 (Tex. App.—San Antonio 1988, writ denied).

A review of the record as a whole reveals that the jury could have found that plaintiff failed to establish that she had suffered an occupational disease, irrespective of Dr. Cobb's and Dr. Winikates' testimony. The allowance of these doctors' testimony, therefore, did not cause the rendition of an improper verdict or judgment. *Rainbo Baking Co. v. Stafford*, 787 S.W.2d 41, 42 (Tex.1990); *McKinney*, 772 S.W.2d at 75; *Gee*, 765 S.W.2d at 396; TEX.R.APP.P. 184(b).

The judgment of the trial court is affirmed.