**Adolfo GARCIA, as Next Friend of Javier Garcia; Adolfo Garcia, as Next Friend of Jessica N. Garcia and Yvonne Ibarra Garcia, Appellants,**

v.

**Daniel Sanchez BANDA and Alberto Sanchez, Appellees.**

No. 04–95–00382–CV.

Court of Appeals of Texas, San Antonio.

Sept. 18, 1996.

Rehearing Overruled Dec. 12, 1996.

B. Mills Latham, Law Offices of B. Mills Latham, Corpus Christi, for Appellants.

David Cano, Law Office of David Cano, Corpus Christi, Shirley Hale Mathis, Mann, Trevino, Hale & Gallego, Baldemar Garcia, Jr., Donato D. Ramos, Person, Whitworth, Ramos, Borchers & Morales, Emilio Alva, Law Office of Emilio Alva, Belinda Mendez, Law Office of Belinda Mendez, Laredo, for Appellees.

Before CHAPA, C.J., and
HARDBERGER and GREEN, JJ.

CHAPA, Chief Justice.

This is an appeal from an order granting appellees' Motion to Enforce Settlement and Set Friendly Suit. On five points of error, appellants contend that the trial court erred in granting the motion. We reverse and remand.

## BACKGROUND

On December 7, 1991, Javier Garcia was involved in an automobile accident which rendered him brain damaged and incapacitated. On February 25, 1993, prior to any lawsuit being filed, appellants' attorney, B. Mills Latham, offered to settle the Garcias' claims against appellees for $60,000. In making this offer of settlement, Latham indicated that if the checks and releases were not received by March 12, 1993, the offer would be withdrawn. According to appellees' attorney, Shirley Hale Mathis, she contacted appellants' attorney and accepted the offer, but indicated her concerns regarding the necessity of a friendly suit. She believed a friendly suit was appropriate in order to appoint attorneys ad litem to represent the interests of Javier's infant daughter, Jessica, and the incapacitated Javier in the settlement. According to Mathis, she and Latham agreed to postpone the issuance of settlement checks until a friendly suit could be filed and heard.

On March 24, 1993, Latham notified Mathis that he planned to file suit on behalf of appellants as the March 12, 1993, settlement deadline had passed. Shortly thereafter, appellants filed an adverse suit. Appellees filed a Motion to Enforce Settlement and Set Friendly Suit ("motion to enforce"), alleging that appellants had reneged on their agreement to extend the settlement deadline. Appellants denied that any such agreement existed. Following a hearing in which both parties were represented by counsel and Javier and Jessica were represented by court-appointed attorneys ad litem, the court granted the motion to enforce. Appellees then agreed to dismiss their third party action against Javier's parents and proceed with a friendly suit.

## ARGUMENTS ON APPEAL

In their first point of error, appellants urge that the trial court erred in granting appellees' motion to enforce because the evidence was legally insufficient to support a finding that a settlement agreement existed. It is undisputed that a settlement offer of $60,000 was made in this case. The controlling issue is whether the attorneys for appellants and appellees entered into an oral agreement that operated to extend the settlement deadline pending the filing of a friendly suit.

We review whether the trial court erred in determining that there was evidence to support the existence of an enforceable settlement agreement under a "no evidence" standard. Accordingly, we must review only evidence and reasonable inferences that tend to support the trial court's finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is any evidence of probative force that tends to support the finding, the finding must be upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). In other words, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16.

At the hearing on appellees' motion to enforce, appellants' attorney denied that Latham entered into an oral agreement whereby the settlement deadline was extended. Appellees' attorney, Mathis, argued that the agreement at issue did in fact exist and that appellants' counsel had reneged on it. The only evidence Mathis introduced in support of her position was a letter she had written in

response to Latham's notification of his intention to file suit. The letter references the alleged agreement and indicates that it was Mathis' understanding that the case had been settled pending the filing of a friendly suit.

Appellants contend, first, that Mathis' assertions regarding the alleged agreement were unsworn and, therefore, not proper evidence before the court. Appellants also contend that Mathis' letter, as the only remaining evidence before the trial court, is insufficient to support the court's finding of an enforceable settlement agreement. We agree.

 Mathis argued her motion before the court as appellees' attorney and was never placed under oath. If her statements were to be considered evidence, they were required to be made under oath, absent a waiver of the oath by appellants. *See Fullenwider v. American Guarantee & Liability Ins. Co.*, 821 S.W.2d 658, 662 (Tex.App.—San Antonio 1991, writ denied); *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex.App.—San Antonio 1989, writ denied). However, such waiver is required and could have taken place only when appellants' attorney knew or should have known that an objection was necessary. *See Beck v. State*, 719 S.W.2d 205, 213 (Tex. Crim.App.1986); *Bloom*, 767 S.W.2d at 471.

 In *Bloom*, the court held that the unsworn statements of the plaintiff's attorney could not be considered as evidence where the defaulting defendant *"could not and did not waive the 'swearing in' of the attorney."* *Bloom*, 767 S.W.2d at 471 (emphasis added). Appellees attempt to distinguish *Bloom*, ar-

guing that the holding therein applies only in a default setting where a party is not present to waive the formality of an oath. We, however, conclude that the reasoning in *Bloom* is applicable to the circumstances of the present case. Where a party is justifiably unaware of the need to object, his failure to object should not be deemed waiver, particularly where the result is a denial of his right to trial.

There is no indication in this record that Mathis' statements were considered anything other than argument by opposing counsel. Towards the end of Mathis' argument to the court, she stated "[y]our honor, as an officer of the court I can just state under oath what—what I am telling the court and what my representations were by Latham and the understanding I had." However, this assertion took place only after she had argued the issue completely and it merely reflects what she perceived to be her agreement. Following this assertion, Mathis concluded her argument with no change in delivery or form.

At no time was Mathis placed under oath, nor did she take the stand or submit to examination from either the court or opposing counsel. Further, the trial court gave no indication that it was accepting Mathis' argument as testimonial evidence. Neither, does the record distinguish between Mathis' alleged testimony and her argument to the court. Accordingly, we find nothing in this record to indicate that appellants' counsel knew or should have known that an objection was necessary during argument to prevent waiver.[1]

---

1. Grasping for support, the dissent relies on *Union City Body v. Ramirez*, 911 S.W.2d 196 (Tex. App.—San Antonio 1995, no writ). In doing so, the dissent ignores the fact that this case is factually distinguishable from *Union City*. Unlike the present case, *Union City* involved a mandamus proceeding to set aside a severance order entered by the trial court. Such proceeding involved a completely different standard of review than the one we are bound to follow here.

Further, the facts in *Union City* were so glaring that this court had no alternative but to find waiver. On appeal, the relator complained for the first time that he had not received proper notice of a motion to sever. The motion to sever was heard prior to trial and the court clearly sustained the motion along with making several

other pretrial rulings. The record reflected that counsel for the relator was aware that the motion to sever had been granted, but continued to argue additional pretrial matters without objecting to the ruling regarding severance or notifying the court of his lack of notice.

The following day, after the severed parties had long been excused, counsel for the relator filed a motion for reconsideration of the severance order but did not notify the court of his lack of notice. The trial court denied the motion, which resulted in the mandamus proceeding. Under these circumstances, this court correctly agreed that a waiver had taken place and that the trial court had not abused its discretion. Clearly, there is no similarity at all between the

■ If we were to accept appellees' contention and find that appellants' attorney waived the administration of the oath by failing to object to Mathis' argument, attorneys would feel compelled to interrupt argument of opposing counsel and demand that counsel be placed under oath in order to ensure preservation of error should one attorney later claim that his argument was considered by the court as testimony. In order for an attorney's statements to be considered as evidence by the court, there must be something in the record which clearly indicates that all concerned were aware that the statements were meant to be testimony. Otherwise, neither the trial court nor the opposing party is on notice that counsel's statements are intended to be considered as testimony. This is particularly true in proceedings resulting in the denial of a party's right to litigate his claims before a trier of fact. In such situations, particular effort should be made to protect the interests of both parties.

It is in this respect that we find this case factually distinguishable from *Fullenwider*. The dissent contends that our holding is in conflict with our holding in *Fullenwider*. However, in *Fullenwider*, the issue before the court was whether the testimony of certain witnesses should have been excluded as the defendant failed to supplement its answers to plaintiff's interrogatories requesting disclosure of those witnesses. The central question, therefore, was whether the defense counsel, having the responsibility to supplement, could show good cause for the failure. The sole showing of good cause for the lack of supplementation was the unsworn statements of the defendant's attorney.

As the burden for showing good cause was clearly on defendant's attorney, this was the only evidence that those involved anticipated. Therefore, since the record clearly showed that all concerned were aware that the statements of defense counsel were intended to be testimony, we held that the statements could be considered as evidence because the attorney for the plaintiff allowed the defendant's attorney to testify without objection. *Fullenwider*, 821 S.W.2d at 662.

facts in *Union City* and those before us in the

There is a clear distinction between the facts of this case, and the facts in *Fullenwider*. *Fullenwider* involved an evidentiary question affecting the trial on the merits. The court's decision did not deprive either party of their day in court. The purpose of the hearing in the present case was not to resolve a pretrial matter with a showing of good cause. Rather, the hearing had the effect of terminally disposing of one party's right to present its case to a jury. The burden on the proponent was not merely to show good cause, but to clearly establish a meeting of the minds which would justify denying an objecting party its right to present its case to the trier of fact. An opposing attorney is justified in expecting more than mere argument from the proponent in satisfying this burden. Accordingly, we find *Fullenwider* distinguishable.

■ As previously noted, the facts of this case are more closely analogous to those in *Bloom*. The proceeding in question resulted in the denial of appellants' right to a trial, as did the default judgment in *Bloom*. A judgment dismissing an entire lawsuit is of such a serious nature that it should rest on more compelling evidence than the unsworn arguments of an attorney. *See De La Garza v. Salazar*, 851 S.W.2d 380, 383 (Tex.App.—San Antonio 1993, no writ) (indicating default judgment resting on unsworn statements of attorney of more serious nature than hearing to determine medical expenses).

Because it is virtually impossible to determine from this record which portions of Mathis' statements, if any, were intended to be testimony and which portions were intended to be argument, we cannot place responsibility for such knowledge on appellants' counsel. Therefore, we hold that the unsworn statements made by Mathis do not constitute evidence which supports the finding of a settlement agreement.

■ Consequently, the only evidence that was properly before the court to support appellees' claims of a settlement agreement was Mathis' letter to Latham. The letter constitutes a self-serving statement by Math-

present case.

is which does no more than reference her "understanding" of the alleged agreement. It fails to establish the meeting of minds required to establish an enforceable agreement, it fails to establish Latham's state of mind as to the alleged agreement, and it fails to contradict Latham's actions which were completely inconsistent with such an agreement.

■ There is nothing in the letter to indicate that Latham agreed to the extension of time urged by appellees or that he was even aware of Mathis' desire to receive an extension of time. In fact, all of Latham's actions in this case subsequent to his initial settlement offer indicate otherwise. As such, the letter in question can not be considered conclusive evidence that the alleged agreement did in fact exist. "When evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Accordingly, we conclude that there is no legally sufficient evidence of the agreement at issue.

We further note that even if we were to find that a settlement agreement existed and that appellants repudiated that agreement, as appellees suggest, such an agreement would remain unenforceable in light of the supreme court's decision in *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855 (Tex. 1995).[2]

■ In *Leal*, our supreme court addressed the issue of whether a party has a right to revoke a settlement agreement before judgment is rendered:

A party may revoke its consent to a settlement agreement at any time before judgment is rendered on the agreement ... A

judgment rendered after one of the parties revokes his consent is void.

*Id.* at 857 (citations omitted).

Appellees in this case claim that they had a settlement agreement with appellants to which appellants allegedly revoked their consent and filed a law suit. Conversely, appellants claim that appellees missed their deadline, and therefore, there is no settlement agreement. If appellants are right then there is no agreement to enforce. If appellees are right, then appellant revoked their consent before judgment was rendered, which the supreme court says they may do.

The dissent must ignore the facts in *Leal* in order to concluded that *Leal* is distinguishable from the case before us. *Leal* involved a motion to enter judgment based upon an agreed settlement recorded in open court. The agreement was approved by the trial judge and resulted in the dismissal of the jury. The effect of the motion was to enforce a settlement agreement which is identical to the issue in the case before us. Regardless of semantics, a motion to enter judgment based on an agreed settlement and a motion to enforce a settlement are one and the same. Under *Leal*, any judgment based upon an agreement to which consent has been revoked is void.

Having determined that the evidence is legally insufficient to support the trial court's finding that a settlement agreement existed in this case, it is not necessary to address appellants' remaining points of error. The judgment of the trial court is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

GREEN, Justice, dissenting.

The majority holds that an attorney's unsworn but unobjected to testimony is "no evidence," a holding that is in direct conflict

---

2. Although the dissent describes as "hypertechnical" the suggestion by the majority that proper testimony should be under oath, it nevertheless insists that we should ignore *Leal* because there is no formal point of error which brings the case in issue. However, the issue before us is whether the trial court properly sustained the alleged settlement agreement, which was the same issue presented in *Leal*.

Certainly, we are not to be limited to the cases cited by the parties in their briefs when determining an issue, particularly when another case out of this court was discussed during oral argument, we ordered additional briefing on the effects of that case on the facts before us, and we are aware that such case is potentially dispositive of the issues presented.

with a previous opinion of this court.[1] On the basis of this erroneous holding, the majority then reverses the trial court's judgment enforcing a pre-suit settlement agreement. The majority also reverses on the basis of error not raised by the appellant, an action plainly prohibited by the supreme court. For these reasons, I respectfully dissent.

## Fact Summary

By letter, the plaintiffs ("Garcia") made a pre-suit policy limits settlement demand, giving the defendants ("Banda") fifteen (15) days in which to make remittance. At the hearing below, Banda's attorney-of-record, Shirley Hale Mathis, testified that she accepted the offer by phone within the time limit specified by Garcia, but, since a minor was involved, she wanted an *ad litem* appointed for the child and wanted the settlement agreement approved by the court. She further testified that this was agreed to by Garcia's attorney, B. Mills Latham. Latham later repudiated the settlement and filed this lawsuit. In response, Banda filed the motion to enforce the settlement agreement, which was granted. This appeal resulted.

## Attorney's Unsworn Testimony

The majority maintains that since Mathis was not formally sworn as a witness, her testimony was incompetent and was legally insufficient to support the existence of a valid oral settlement agreement between the parties. The law is not so hypertechnical and rigid, however, that in order for a witness's testimony to be competent he or she must solemnly raise their right hand, affirm the formal incantation to tell the truth, and take the witness chair. Shirley Mathis is an officer of the court who, in order to receive her license to practice law in this State, took an oath to "honestly demean [herself] in the practice of law," TEX.GOV'T CODE ANN. § 82.037(a)(2) (Vernon 1988), and subjected herself to professional discipline in the event she was not truthful. TEX.DISCIPLINARY R.PROF.CONDUCT 3.03 (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9). If the purpose of an oath is to "awaken [a witness's] conscience and impress his mind with his duty [to testify truthfully]", TEX. R.CIV.EVID. 603, a lawyer surely needs no further admonishment to be cognizant of his or her legal and ethical duties.

But that is not the main reason Mathis's testimony was properly considered as evidence in this case. During the hearing below, and before repeating her testimony on the salient facts, Mathis made the following statement to the court in the presence of opposing counsel:

> MS. MATHIS: Your Honor, as an officer of the Court I can just state under oath what—what I am telling the Court and what my representations were by Mr. Latham and the understanding I had.[2]

It is evident that Mathis considered herself under oath and gave her testimony subject to the penalties the law provides. Garcia made no objection to her testimony and did not require her to be formally sworn.

The swearing of a witness is a procedural requirement that may be waived. *See Fullenwider v. American Guarantee & Liability Ins. Co.,* 821 S.W.2d 658, 662 (Tex.App.—San Antonio 1991, writ denied) (attorney for plaintiff allowed defendant's attorney to testify without objection, thus waiving administration of the oath). But the majority holds there was no waiver in this case, relying on *Bloom v. Bloom,* 767 S.W.2d 463, 471 (Tex. App.—San Antonio 1989, writ denied).[3]

---

1. *Fullenwider v. American Guarantee & Liability Ins. Co.,* 821 S.W.2d 658, 662 (Tex.App.—San Antonio 1991, writ denied).

2. It is perhaps worthy of noting that the other party to the alleged oral settlement agreement, attorney Mills Latham, chose not to attend the hearing which was set specifically for the purpose of proving and enforcing the settlement agreement. We can only speculate as to his motives in not attending, but it is reasonable to conclude that had he been there to testify Latham might have been forced to confirm Mathis's testimony.

3. The majority says that "[w]here a party is justifiably unaware of the need to object, his failure to object should not be deemed waiver." 935 S.W.2d at 793 (Chapa, C.J.) But in *Union City Body Co. v. Ramirez,* 911 S.W.2d 196, 201 (Tex. App.—San Antonio 1995, no writ) (Chapa, C.J.) this court held that the appellant waived error

*Bloom* is a default judgment case where the court properly disregarded the plaintiff attorney's unsworn testimony because the defaulting defendant was not present to be able to waive the swearing of the attorney. *Bloom's* holding makes sense, but it is also quite obvious that it has nothing to do with this case—Garcia's attorney was in the courtroom when Mathis offered her testimony. If Mathis should have been sworn as a witness, Garcia waived the requirement. The majority's holding is in direct conflict with *Fullenwider.*

The majority further asserts that because Mathis's testimony did not distinguish between "testimony" and "argument," Garcia somehow did not know when to require her to be placed under oath, and consequently he should now be excused from his failure to object. But these circumstances are no different than most any other situation where a lawyer is required to distinguish between objectionable and non-objectionable testimony. Having been placed on notice that Mathis was preparing to offer evidence by her statement that she was "stat[ing] under oath" her testimony, Garcia was obligated to object if he wished to preserve his right to complain in this court. Because he did not do so, his point of error should be overruled. Instead, the majority abandons traditional error preservation principles and creates a new rule—if you do not know you have to object, your failure to do so will not be deemed a waiver. The majority tells future appellants that they can, indeed, "lay behind the log" and successfully raise error for the first time on appeal. That is a strategy this court has traditionally disallowed, but is inexplicably permitting here.

### Disposition on Unassigned Error

The majority additionally relies on *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855 (Tex.1995), in concluding that this case should be reversed because Garcia's consent to the settlement had been withdrawn prior to the rendition of the judgment, thus voiding the judgment based on the agreement. But

when its objection to a surprise severance order wasn't made until the morning following the trial court's order, even though the effect of the severance was still not apparent by the time of oral

this was not an issue raised and argued by Garcia in a point of error; instead, the issue came into the case for the first time through a question from the court at oral argument.

We are authorized to reverse a case only on the basis of properly assigned error. Tex. R.App.P. 81(b)(1) ("No judgment shall be reversed on appeal ... unless the appellate court shall be of the opinion that *the error complained of* ... cause[d] the rendition of an improper judgment....") (emphasis added). Thus, other than for the purpose of determining our jurisdiction, we exceed our proper role as a court when we raise and address unassigned and unbriefed issues in cases before us. The reason for this is clear: when we take on issues not raised by the parties, we become advocates and abandon our responsibility to act as independent and fair arbiters of the law for the resolution of disputes.

The parties and their lawyers are uniquely qualified to exercise discretion and professional judgment in deciding what issues are best presented to the court in their appeal, and we properly consider and decide only those issues. We cannot substitute our professional judgment for that of the lawyers by suggesting, and then deciding the case on, alternate dispositive legal theories. Whether or not the new issues are briefed by the parties at the court's invitation, it is reversible error for a court of appeals to decide a case on the basis of unassigned error. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 875 (Tex.1982) (per curiam) (judgment of the court of appeals reversed because decision based on unassigned error).

But apart from the majority's error in addressing an issue not raised on appeal by appellant, this is not a case controlled by *Leal.* While I agree that the broad language of *Leal* quoted in the majority appears on the surface to require the conclusion that the judgment is void, the facts do not support such a result. This is not a case, as in *Leal,* where one of the parties has withdrawn his

argument in the case; that is to say, even though the appellant was "justifiably unaware of the need to object."

consent to a settlement agreement and the court nonetheless proceeds to enter judgment in accordance with the repudiated agreement. Instead, the judgment in this case is based on proof of Banda's affirmative defense to Garcia's lawsuit.

Garcia repudiated his settlement agreement and then filed suit for personal injuries. Banda answered the lawsuit with pleadings alleging compromise and settlement as a defense to Garcia's claims. Banda was thus entitled to prove up the settlement agreement and substitute his obligations under that agreement for any damages that Garcia would otherwise have been able to prove in a trial on his personal injury claim.

Banda successfully proved the settlement agreement. In a hearing on his Motion to Enforce Settlement and Set Friendly Suit, attended by Garcia's counsel, Banda established the terms of the agreement. The judgment thereupon rendered by the trial court was not based on the previous consent that was withdrawn, but was instead based on the pleadings and evidence supporting Banda's affirmative defense.

The supreme court has recognized that settlement agreements are enforceable in the face of repudiation. In *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442 (Tex.1983), the only matter before the court was whether consent had been withdrawn before the judgment on the settlement was rendered. Lacking consent, the judgment was void. *Quintero*, 654 S.W.2d at 444. But, significantly, the court indicated that where the issue has been pled and the facts and circumstances establish the existence of an enforceable agreement, a judgment may be rendered on that agreement.

> [T]he only question before the trial court was whether all parties consented to the judgment at the time it was rendered. Therefore, our reversal of the judgment of dismissal is *without prejudice to the rights of [ ] Jim Walter Homes in its attempt to plead and prove an enforceable settlement agreement*. . . .

*Quintero*, 654 S.W.2d at 444 (emphasis added).

The difference between this case and *Leal*, then, is that the judgment here is based on evidence of the facts and circumstances establishing the existence of an enforceable settlement agreement and is not based on any consent to judgment. Banda established his affirmative defense to Garcia's claim, entitling him to judgment in accordance with the terms of the settlement agreement.

It can certainly be argued that the procedure utilized by Banda was unconventional—a summary judgment proceeding would probably have been more appropriate. But Garcia did not object to either the procedure used or to the quality of the evidence presented. None of those present at the hearing could have been mistaken that the issue being presented was whether there was an enforceable settlement agreement that served as a defense to Garcia's lawsuit. The trial court found that there was such an agreement and entered judgment accordingly. The *Leal* holding thus does not apply.

### Conclusion

The majority refuses to follow clear precedent from this court in setting aside the trial court's finding of a settlement agreement based on an attorney's unsworn testimony. Settlement of disputes is strongly favored by the courts and we do harm to that policy with this result. And contrary to the majority's assertion, we do not deny Garcia's right to litigate his claims before a trier of fact if we enforce the settlement agreement. As clearly expressed by its terminology, a settlement agreement is voluntarily entered into by the parties. If there was a desire to litigate the claims before a jury, no agreement would have been made. But once made, the agreement is enforceable as any contract.

The unchallenged testimony of attorney Mathis established the existence of the oral agreement and the trial court was authorized to make its finding. The evidence being legally and factually sufficient to support the trial court's finding, under well-established standards of appellate review, we cannot set aside its decision. But in reaching its result, the majority departs from those standards.

Moreover, I believe the majority has strayed much too far from any reasonable

interpretation of the points of error raised by Garcia. Reversing this case on the basis of the unassigned error, particularly when the error in doing so is compounded by what I believe to be a misapplication of the law, is not authorized by the rules or the supreme court.

I respectfully dissent.